TELEGRAPH SAVINGS & LOAN ASSOCIATION OF CHICAGO *et al.,* Plaintiffs-Appellants, *v.* WILLIAM J. SCHILLING, Indiv. and as Commissioner of Savings and Loan Associations for the State of Illinois, Defendant-Appellee.

First District (3rd Division)   No. 80—2153

Opinion filed May 25, 1983.—Rehearing denied June 29, 1983.

Baker & McKenzie, of Chicago (Francis D. Morrissey, James G. Staples, Michael K. Murtaugh, Daniel J. O'Connor, and Thomas A. Doyle, of counsel), for appellants.

Tyrone C. Fahner, Attorney General, of Springfield (Michael J. Hayes, Roger P. Flahaven, and Gary E. Medler, Assistant Attorneys General, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiffs, Telegraph Savings & Loan Association of Chicago (Telegraph) and the officers and directors thereof, appeal from the order of the circuit court of Cook County dismissing with prejudice their chancery action against defendant, William J. Schilling, individually and as Commissioner of Savings and Loan Associations for the State of Illinois (Commissioner). By their suit, plaintiffs sought relief from defendant for his closing of Telegraph without giving the advance statutory written notice required except where an emergency existed; and without the Commissioner making a finding that an emergency existed.

Section 7—8 of the Illinois Savings and Loan Act (Ill. Rev. Stat.

1981, ch. 17, par. 3191, formerly Ill. Rev. Stat. 1979, ch. 32, par. 848) details the Commissioner's authority to take custody of a savings and loan association and concludes:

"Unless the Commissioner finds that an emergency exists which may result in loss to members or creditors and requires that he take custody immediately, he first shall give written notice to the directors, trustees, or liquidators specifying the conditions criticized and state a reasonable time within which correction may be made."

Section 7—12 of the Illinois Savings and Loan Act (Ill. Rev. Stat. 1981, ch. 17, par. 3195, formerly Ill. Rev. Stat. 1979, ch. 32, par. 852) provides:

"Immediately upon taking custody of an association or trust, the Commissioner shall mail a written notice thereof to the president or secretary and not less than 2 directors of such association, or to 2 or more of the trustees of any trust, or 2 or more of the liquidators of an association in liquidation. If the contention is made that the Commissioner has no legal grounds for taking custody of the association or trust, the directors or officers of the association or the trustees or liquidators thereof, as the case may be, at any time within 10 days after the mailing of such notice, or within such further periods of time as the Commissioner may extend, but not to exceed an additional 60 days, may file a complaint in the Circuit Court of Sangamon County, Illinois or in the Circuit Court of the county in which the association is located, to enjoin further custody. The court thereupon shall cite the Commissioner to show cause why further custody should not be enjoined. If upon a hearing thereon, the court finds that such grounds did not or do not then exist, it may enter an appropriate order in accordance with the findings of fact, or an order enjoining the Commissioner or any appointees acting under his direction from further custody."

Defendant filed a 12-point motion to dismiss, which was granted. The three grounds stated by the trial court in granting the motion were: (1) the Federal court had assumed exclusive jurisdiction over the matter; (2) injunctive relief was no longer effective; and (3) the action was sustainable only in the law division rather than the chancery division.

The factual background of this litigation is stated by the United States Court of Appeals for the Seventh Circuit in its opinion in the consolidated appeals of *Telegraph Savings & Loan Association v. Schilling* (7th Cir. 1983), 703 F.2d 1019. This opinion was handed

down on March 29, 1983, after the oral argument in the case at bar. The court there stated:

"In this appeal Telegraph Savings & Loan Association (Telegraph) challenges its closure by the Illinois Commissioner of Savings and Loan Associations (Commissioner), the appointment of the Federal Savings & Loan Insurance Corporation (FSLIC) as receiver and the subsequent sale of Telegraph's assets to First Federal Savings & Loan Association. The district court held that the takeover and sale were proper. We affirm.

Telegraph was an Illinois chartered savings and loan association owned by one hundred and twenty stockholders and insured by the FSLIC. In the late 1970's Telegraph began experiencing financial difficulties. As a result of heavy losses, it was unable to satisfy the reserve and net worth minimums required by 12 C.F.R. §563.13. When Telegraph's financial condition continued to decline at an ever-increasing rate, the state and federal officials charged with regulating savings and loan associations became alarmed. A special meeting was held in October 1979 to identify the cause of Telegraph's decline and to propose some solutions. Telegraph's Board of Directors and representatives of the Commissioner, the FSLIC and the Federal Home Loan Bank Board (FHLBB) attended. At this meeting the Commissioner concluded that undercapitalization was causing Telegraph's shaky financial condition and indicated that, unless this situation was remedied, the state would have to assume custody.

Additional meetings were held in 1979 and 1980 to monitor Telegraph's financial status and to develop a plan for infusing Telegraph with new capital. Possible mergers were considered but only one concrete plan surfaced. The Heron Corporation offered to purchase 80% of Telegraph's preferred stock if the FSLIC would finance the purchase with a fifteen year interest free loan. The FHLBB vetoed the Heron proposal.

When no other buyers came forward, the Commissioner and federal officials concluded that they had no choice but to take control. A takeover plan was devised whereby the Commissioner would assume custody of Telegraph and FHLBB would immediately appoint the FSLIC receiver. The FSLIC, in turn, would immediately transfer Telegraph's assets to First Federal Savings & Loan Association under a purchase and assumption agreement.

According to this prearranged plan, the takeover was ef-

fected on May 22, 1981 at Telegraph's main office. Just before the usual closing time the Commissioner served Telegraph's president with a notice that the state was assuming immediate custody. The notice explained that Telegraph's financial instability had created an emergency situation which necessitated the takeover. Telegraph had not received prior written notice of this decision [required, unless an emergency exists, by Ill. Rev. Stat. 1979, ch. 32, par. 848, now Ill. Rev. Stat. 1981, ch. 17, par. 3191]. After serving the president with the notice, the Commissioner sent his deputy to the teller's window where one of Telegraph's customers, A. Raymond Bacon, was waiting to withdraw twenty-five dollars. Bacon was making the withdrawal solely because the FHLBB had requested him to do so. When Bacon approached the teller, the deputy intervened. He took the withdrawal slip from Bacon and handed it, along with an affidavit stating that Bacon had been unable to withdraw his money, to the FHLBB agent. The purchase and assumption agreement was executed immediately and the next day Telegraph's operation opened under First Federal's name.

Telegraph then filed identical actions challenging the takeover and the appointment of the FSLIC as receiver in the federal court for the Northern District of Illinois and in the state court in the Circuit Court of Cook County. The federal action was assigned to Judge Grady. The state action was removed to federal court and assigned to Judge Marshall. Judge Marshall held that federal courts have exclusive jurisdiction over any action to remove the FSLIC as receiver and concluded that, since the state court never had jurisdiction over the action, it had no authority to remove it to federal court. Declining to grant Telegraph's request to remand back to the state court, Judge Marshall dismissed the action. Telegraph appealed to this court.

Telegraph also filed a new state court action, this time proceeding against the Commissioner but not the federal agencies. The state court, relying on Judge Marshall's opinion that federal courts have exclusive jurisdiction, dismissed that action. Telegraph appealed this dismissal; that appeal is currently pending in the state court.

The central issue in the case proceeding before Judge Grady was whether the requirements for appointment of an FSLIC receivership, set forth in 12 U.S.C. §1729(c)(2) had been satisfied. Section 1729(c)(2) provides that the FHLBB has the au-

thority to appoint the FSLIC receiver over a state savings and loan institution whenever it determines:

(A) that *** (ii) an insured institution has been closed by or under the laws of any State; and

(B) that one or more of the grounds specified in paragraph (6)(A) of section 1464(d) of this title, existed with respect to such institution at the time a conservator, receiver, or other legal custodian was appointed, or at the time such institution was closed ***; and

(C) that one or more of the holders of withdrawable accounts in such institution is unable to obtain a withdrawal of his account, in whole or in part; ***.

12 U.S.C. §1729(c)(2). Judge Grady concluded in response to defendants' motion for summary judgment that subsections (A) and (C) had been satisfied.

Thereafter a bench trial was held on the issue of whether subsection (B) had been satisfied. The FHLBB argued that applying the statutory test of insolvency, which is whether the 'assets of the association are less than its obligations to its creditors and others ***' 12 U.S.C. §1464(d)(6)(A)(i), Telegraph had been insolvent at the time of the appointment. Therefore, the FHLBB contended, section 1729(c)(2)(B) had also been fulfilled. Judge Grady agreed and entered judgment in favor of defendants." 703 F.2d 1019, 1021-22.

The Court of Appeals also stated:

"The difference between a situation where the state appoints the FSLIC receiver and one where the FHLBB appoints the FSLIC receiver is the type of judicial review available. A section 1729(c)(1) receivership, where the receiver is appointed by the state commissioner acting pursuant to state law, can be challenged in state court. In contrast, where the FHLBB, acting on its own, appoints the FSLIC receiver the challenge to that receivership can be raised only in federal court. 12 U.S.C. §1464(d)(6)(A).

\* \* \*

Telegraph characterizes the takeover orchestrated jointly by state and federal officials as a sham procedure because it created a receivership which could be challenged only in federal court. It emphasizes that if the Commissioner had assumed custody and appointed the FSLIC receiver without acting in conjunction with federal authorities, the Commissioner's finding of an emergency situation justifying the takeover without prior

written notice could have been challenged in state court. Since the FHLBB, rather than the state, appointed the FSLIC receiver, however, Telegraph was restricted to challenging the action in federal court. And since the district court held that the issue of whether Telegraph was closed in compliance with state law was irrelevant to the issue of whether the FHLBB properly determined that Telegraph was insolvent under 12 U.S.C. §1464(d), Telegraph claims that it was caught in a 'jurisdictional gap between the state and federal spheres, leaving [Telegraph] without a forum.' Appellant's br. at 31. As a result of this 'jurisdictional gap,' Telegraph complains there is no court where the issue of whether the Commissioner acted in compliance with state law can be raised." 703 F.2d 1019, 1023-24.

With reference to Telegraph's right to judicial review, the Court of Appeals said:

"The fact that the receivership must be challenged in federal court instead of state court, however, does not deprive Telegraph of effective judicial review. While the statute, as amended, makes no provision for reviewing actions of the state authorities, it does provide for a full review of whether the FHLBB was justified in appointing the FSLIC. In the overall statutory scheme the loss of review in state court is a trade-off for federal insurance. Congress has concluded that the interests of FSLIC's financial integrity demand that the FHLBB be able to assert its authority when it deems necessary. It has also provided for full review in federal court of whether Telegraph's financial condition justified appointment of a receiver. Thus, it is difficult to understand how Telegraph can complain that it has been denied a forum.

\* \* \*

Where, as here, the state and federal authorities cooperate to close a state institution and appoint the FSLIC receiver in an effort to minimize financial risks and prevent depositor panic, compliance with the closing precondition becomes 'substantially a ceremonial formality.' *Fidelity Savings & Loan Ass'n v. Federal Home Loan Bank Board*, 689 F.2d 803, 813 (9th Cir. 1982). Thus, what Telegraph characterizes as a sham proceeding was merely the cooperative effort of state and federal authorities to protect depositors while at the same time minimizing FSLIC liability.

Yet, Telegraph has failed to show that denial of state court

review deprived it of any rights. The evidence overwhelmingly establishes that Telegraph was in precarious financial condition and was continuing to decline. The evidence also establishes that Telegraph attended numerous meetings in 1979 and 1980 where Telegraph was put on notice that both state and federal officials intended to act unless its financial condition stabilized.

Telegraph apparently believes its financial situation was not sufficiently precarious to justify the appointment of a receiver and that it should have a full opportunity to challenge the appointment. We agree. And that is precisely the opportunity it had in federal court. The mere fact that its challenge to the receiver's appointment had to be framed with reference to section 1729(c)(2)'s requirements rather than by way of a challenge to the Commissioner's exercise of his state authority is not significant. Both challenges required Telegraph to establish that it was not insolvent or operating in a manner which put its depositors' money at risk. It had this opportunity in federal court and failed. Full judicial review has been granted." 703 F.2d 1019, 1024-25.

The Court of Appeals, concerning Telegraph's contention that it had been deprived of a forum in which to litigate its challenge to the Commissioner's takeover without prior written notice and a finding of an emergency, stated:

"Telegraph claims that Judge Marshall erred in refusing to sever and remand the state law counts against the Commissioner. It also asserts that Judge Marshall's determination that the state claims were 'part and parcel' of the federal action was contradicted by Judge Grady's later ruling that a challenge to the Commissioner's action should be litigated in state court. Telegraph maintains that these two rulings operated to deny it the right to challenge the Commissioner's ex parte state action, a right which is granted by Ill. Rev. Stat. ch 32, §852. Telegraph complains that as a result of the two contradictory rulings it has no forum in which to challenge the Commissioner's finding that there was an emergency situation justifying a takeover without prior written notice.

We find nothing contradictory in the two rulings. Judge Marshall refused to remand the claim against the Commissioner because he believed that all Telegraph's claims were part of its challenge to the FHLBB's appointment of the FSLIC as receiver and that a challenge to a federal receivership could be maintained only in federal court. Judge Grady held that review

of state law questions was not part of an action to challenge a receiver under 12 U.S.C. §1729(c)(2). The fact that Judge Grady dismissed the separately pleaded state law counts without prejudice merely indicates that these claims are independent of Telegraph's challenge to a federal receivership under federal law. *The dismissal cannot be read as a ruling on the validity of the state claims.*

Telegraph's real complaint is that the state court judge dismissed Telegraph's second state court action because he read Judge Marshall's dismissal to mean that the state court had no jurisdiction to hear the state claims. *Whether Telegraph has a state cause of action is properly left to the state court. Neither Judge Marshall's ruling nor Judge Grady's ruling is binding on the state court.* Since the state court dismissal is currently on appeal we leave it for the state appellate court to determine if Telegraph has any valid state claim.

We hold that Judge Grady's ruling and Judge Marshall's ruling are not in conflict and *in no way operate to deny Telegraph a forum in which to challenge the propriety of the Commissioner's action under state law."* (Emphasis added.) 703 F.2d 1019, 1029-30.

It is apparent from the record before us that the State recognized that the Illinois courts were the proper forum for the disposition of plaintiffs' State law claims; it is also clear that the State, while it so told the Federal courts, also told the State court that the Federal courts had jurisdiction of those claims. Judge Grady properly realized that the State's challenge in the State court to State court jurisdiction of Telegraph's State law claims because of the claimed exclusive Federal jurisdiction and its challenge in the Federal court to that court's jurisdiction over State law claims could result in Telegraph being "whip-sawed" by being left without a forum in which to settle its State law claims.

■■ Defendant appears to argue that because the trial court granted his motion to dismiss based in part on the pendency of the Federal court action as "another action pending between the same parties for the same cause" (Ill. Rev. Stat. 1979, ch. 110, par. 48(1)(c), now codified as Ill. Rev. Stat. 1981, ch. 110, par. 2—619(a)(3)), the subsequent actions of the Federal courts, either District or Court of Appeals, can have no effect in the case at bar. We disagree.

In *International Games, Inc. v. Sims* (1982), 111 Ill. App. 3d 922, 927, 444 N.E.2d 736, it was stated with reference to a Federal court's failure to pass on State law claims:

"IGI is properly concerned, of course, that it may find itself without any redress for its grievances if the Federal court rules that it has no jurisdiction over Sims' State law claims. This apprehension will be present in almost all section 48(1)(c) motions where the other action is pending in Federal court. Such speculation, however, cannot inhibit a court from exercising its discretion, for section 48(1)(c) can be used whenever another suit for the same cause and between the same parties is pending in another county, another State or in the Federal courts. (*Skolnick v. Martin* (1964), 32 Ill. 2d 55, 59-60, 203 N.E.2d 428.) If the Federal court ultimately dismisses Sims' state law claims for lack of jurisdiction, IGI can reinstitute this complaint. Dismissal under section 48(1)(c) will not bar a subsequent suit in Illinois, because the ruling is not upon the merits of IGI's claim. Presently, IGI may file this action as a compulsory counterclaim to the Federal suit and have its charges heard with that suit."

Written notice was not given to Telegraph. It contends that it is entitled to a determination by a State court as to the existence of an emergency which would give the Commissioner the right to dispense with the giving of notice. We agree. Whatever the binding effect of the opinion of the Court of Appeals may be on certain facets of the litigation, it does not necessarily foreclose a finding by the State court of a lack of an emergency. Under the reasoning of *International Games,* Telegraph has a right to have its State law claims resolved in a State court.

■ The inconsistent positions taken by the State require a reversal of the dismissal by the circuit court of Cook County and a remandment to that court to determine whether the Commissioner exceeded his State powers under section 7–8 (Ill. Rev. Stat. 1981, ch. 17, par. 3191) and to what relief plaintiffs are entitled under section 7–12 (Ill. Rev. Stat. 1981, ch. 17, par. 3195).

■ Although the trial court in dismissing also held that injunctive relief against the Commissioner would be completely ineffective because he no longer had custody of Telegraph, that fact does not in and of itself bar plaintiffs from relief. Section 7–12 provides "[i]f upon a hearing thereon, the court finds that such grounds [legal grounds for taking custody] did not or do not then exist, it may enter an appropriate order in accordance with the findings of fact ***." (Ill. Rev. Stat. 1981, ch. 17, par. 3195.) This provision may give a right to damages. The Court of Appeals in a footnote so noted:

"Although it held that the federal appointment could not be

challenged under state law, the district court noted that if either the state or federal authorities violated state law, Telegraph may have an action for damages under Illinois law, Ill. Rev. Stat. ch. 32, §852, or under federal law, 42 U.S.C. §1983." (703 F.2d 1019, 1024 n.4.)

("Ch. 32, §852" is now section 7—12 of the Illinois Savings and Loan Act (Ill. Rev. Stat. 1981, ch. 17, par. 3195).) See *Mensik v. Smith* (1960), 18 Ill. 2d 572, 586, 166 N.E.2d 265.

Defendant contends that such relief is not available to plaintiffs because they neither asked specifically for damages nor tendered an amendment so asking. Plaintiffs' prayer for relief, however, prayed for "such other relief as is equitable." The prayer for general relief " '*** is the best prayer next to the Lord's prayer.' " (See *VanZanten v. VanZanten* (1915), 269 Ill. 491, 497, 109 N.E. 986.) In addition, plaintiffs twice requested, once orally and once in a reply to the Commissioner's brief in support of the motion to dismiss, an opportunity to amend.

On remand, plaintiffs, if they so see fit, will have the opportunity to move to amend to specifically seek damages and to transfer the cause to the law division. At that time their right to damages under section 7—12 can be fully presented to and considered by the trial court.

Because we hold that, under the circumstances shown, plaintiffs are entitled to have a State court pass on the State law questions, we find it unnecessary to consider other questions raised by defendant in this court to sustain the dismissal. They can be raised in and be passed upon by the circuit court.

The order of the circuit court of Cook County is reversed and the cause remanded for further proceedings.

Reversed and remanded.

McNAMARA, P.J., and McGILLICUDDY, J., concur.