(No. 59149

TELEGRAPH SAVINGS & LOAN ASSOCIATION OF CHICAGO *et al.*, Appellees, v. WILLIAM J. SCHILLING, Indiv. and as Commissioner of Savings and Loan Associations, Appellant.

*Opinion filed November 30, 1984.—Rehearing denied February 1, 1985.*

UNDERWOOD and SIMON, JJ., and RYAN, C.J., dissenting.

Neil F. Hartigan, Attorney General, of Springfield (Michael J. Hayes and Roger P. Flahaven, Assistant Attorneys General, of Chicago, of counsel), for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey, James G. Staples, Daniel J. O'Connor, and Thomas A. Doyle, of counsel), for appellees.

JUSTICE MORAN delivered the opinion of the court:

Plaintiffs, Telegraph Savings and Loan Association of Chicago and the officers and directors thereof (collectively referred to as Telegraph), filed a complaint in the circuit court of Cook County against defendant, William J. Schilling, individually and as Commissioner of Savings and Loan Associations for the State of Illinois (Commissioner). Telegraph challenged the Commissioner's closing of the Association without advance written notice or a valid finding of an "emergency" situation which would excuse the advance-written-notice requirement (Ill. Rev. Stat. 1979, ch. 32, par. 848, now Ill. Rev. Stat. 1983, ch. 17, par. 3191). The Commissioner filed a motion to dismiss the action, which was granted. Telegraph appealed from the order of the circuit court, which dismissed the action against the Commissioner with prejudice. The appellate court reversed the dismissal order and remanded for further proceedings. (115 Ill. App. 3d 331.) We allowed the Commissioner's petition for leave to appeal (87 Ill. 2d R. 315(a)).

The central issue raised on appeal is whether Telegraph is entitled to a State court determination of the State-law "emergency" issue raised in its complaint.

The general background information necessary for an understanding of the issue is disclosed in the Seventh Circuit Court of Appeals opinion, *Telegraph Savings &*

*Loan Association v. Schilling* (7th Cir. 1983), 703 F.2d 1019. In the late 1970's, Telegraph, an Illinois chartered savings and loan association, failed to meet the reserve and net worth minimums required by 12 C.F.R. section 563.13 (1980). As such, State and Federal officials responsible for the regulation of savings and loan associations met to analyze the source of Telegraph's financial difficulties. It was concluded that undercapitalization was responsible for Telegraph's financial decline. At this time, the Commissioner indicated that the State would be forced to assume custody if the situation were not remedied.

Telegraph's financial condition was the subject of subsequent meetings held in 1979 and 1980. A take-over plan was devised which involved the joint efforts of the Commissioner, the Federal Home Loan Bank Board (FHLBB), and the Federal Savings and Loan Insurance Corporation (FSLIC).

The record reveals that on May 22, 1980, the Commissioner took custody of Telegraph pursuant to section 7—8 of the Illinois Savings and Loan Act (Act) (Ill. Rev. Stat. 1979, ch. 32, par. 848). Section 7—8(e) provides in relevant part:

> "Unless the Commissioner finds that an emergency exists which may result in loss to members or creditors and requires that he take custody immediately, he first shall give written notice to the directors, trustees, or liquidators specifying the conditions criticized and state a reasonable time within which correction may be made."

The Commissioner did not give advance written notice of intent to take custody. Rather, he appeared at Telegraph's offices on the day of the seizure with a document entitled "NOTICE OF TAKING CUSTODY OF TELEGRAPH SAVINGS AND LOAN ASSOCIATION OF CHICAGO." This notice states that the Commissioner had made a finding that the withdrawable and perma-

nent reserve capital of Telegraph were impaired, creating an emergency situation and necessitating immediate custody by the Commissioner.

Almost immediately after the Commissioner presented Telegraph's president with the notice, the FHLBB appointed the FSLIC as receiver of Telegraph, pursuant to 12 U.S.C. section 1729(c)(2) (1976). The FSLIC immediately transferred Telegraph's assets to First Federal Savings and Loan Association under a purchase and assumption agreement.

In the instant appeal, the Commissioner has raised several issues for review by this court. Before we reach those issues, we must address an issue raised by Telegraph. It argues that this court lacks jurisdiction because the Commissioner failed to file his petition for leave to appeal within 35 days after the entry of the judgment appealed from, as mandated by Supreme Court Rule 315(b) (87 Ill. 2d R. 315(b)). Rule 315(b) provides, on motion, for an extension of time for petitioning for leave to appeal. While the rule expressly states that "such motions are not favored and will be allowed only in the most extreme and compelling circumstances," this court, nonetheless, granted the Commissioner's motion based on the circumstances set forth therein. Accordingly, Telegraph's argument is without merit.

Because we find that this court does have jurisdiction, we turn to the arguments raised by the Commissioner. Initially he contends that Telegraph lacks capacity to maintain this action. In support of this contention he relies on 12 C.F.R. section 569a.4 (1980). Pursuant to this Federal regulation, the FSLIC, as receiver, succeeds to "all the rights, titles, powers and privileges of the insured institution *** [as well as those of] its officers and directors ***." Further, under the regulation, the officers and directors of the seized institution "shall not thereafter have or exercise any such rights, powers, or

privileges or act in connection with any asset or property of any nature of the institution in receivership." As such, it is the Commissioner's position that Telegraph is precluded from prosecuting this action because "all property rights, including choses in action have been vested in the FSLIC."

The Commissioner cites three Federal cases which, he contends, adopt this position. (*First Savings & Loan Association v. First Federal Savings & Loan Association* (D. Hawaii 1981), 531 F. Supp. 251; *First Savings & Loan Association v. First Federal Savings & Loan Association* (D. Hawaii 1982), 547 F. Supp. 988; *Manning Savings & Loan Association v. Federal Savings & Loan Insurance Corp.* (N.D. Ill. Sept. 14, 1983), No. 83—C—757.) The Commissioner's reliance on these cases is misplaced. It is true that these cases expressly recognize that the FSLIC acquires all powers necessary to administer the operations of a seized institution pursuant to the regulations (12 C.F.R. sec. 569a.4 (1980)) promulgated under 12 U.S.C. section 1729(d) (1976). This includes the power to represent the institution in any legal action. (12 C.F.R. sec. 569a.6(a)(2-3) (1980).) At the same time, however, these cases acknowledge the limited right of an association to challenge the appointment of a receiver pursuant to 12 U.S.C. section 1464(d)(6)(A) (1976). The Illinois Savings and Loan Act contains similar provisions. Thus, pursuant to section 7—10 of the Act, the Commissioner, if he takes custody of an association, succeeds to "all powers necessary to accomplish the purposes of custody, including (but not limited to) the powers, privileges and authority previously vested in the officers, directors, liquidators or trustees ***." (Ill. Rev. Stat. 1979, ch. 32, par. 850, now Ill. Rev. Stat. 1983, ch. 17, par. 3193.) In a provision analogous to 12 U.S.C. section 1464(d)(6)(A) (1976), section 7—12 of the Act expressly authorizes a challenge to the Commissioner's cus-

todial action. Section 7—12 provides:

> "Immediately upon taking custody of an association or trust, the Commissioner shall mail a written notice thereof to the president or secretary and not less than 2 directors of such association, or to 2 or more of the trustees of any trust, or 2 or more of the liquidators of an association in liquidation. If the contention is made that the Commissioner has no legal grounds for taking custody of the association or trust, the directors or officers of the association or the trustees or liquidators thereof, as the case may be, at any time within 10 days after the mailing of such notice, or within such further periods of time as the Commissioner may extend, but not to exceed an additional 60 days, may file a complaint in the Circuit Court of Sangamon County, Illinois or in the Circuit Court of the county in which the association is located, to enjoin further custody. The court thereupon shall cite the Commissioner to show cause why further custody should not be enjoined. If upon a hearing thereon, the court finds that such grounds did not or do not then exist, it may enter an appropriate order in accordance with the findings of fact, or an order enjoining the Commissioner or any appointees acting under his direction from further custody." Ill. Rev. Stat. 1979, ch. 32, par. 852, now Ill. Rev. Stat. 1983, ch. 17, par. 3195.

The powers granted to the Federal receiver, pursuant to the Federal regulation, and the Commissioner pursuant to section 7—10 of the Act are merely the administrative powers necessary for the receiver to conduct the business operations of the seized institution. The bestowal of such powers does not deprive the seized institution of its statutory right to challenge the Commissioner's original take-over. The clear language of the statute indicates otherwise. Thus, by bringing its State action pursuant to section 7—12 of the Act, Telegraph was merely exercising its statutory right to judicial review of the Commissioner's actions. Furthermore, as Telegraph correctly observes, this court has previously stated "that

if the legislature did not accord the right to obtain judicial review and control of the [Commissioner's] conduct the Savings and Loan Act would be constitutionally suspect. [Citations.]" *Mensik v. Smith* (1960), 18 Ill. 2d 572, 586.

The Commissioner further argues that the resolution of Telegraph's claims in Federal court, under 12 U.S.C. section 1464(d)(6)(A) (1976), operates as a bar to the State action. Applying the doctrine of collateral estoppel, the Commissioner argues that the findings of fact made by the Federal court, pursuant to Telegraph's attempt to remove the FSLIC as receiver, demonstrate that his actions were reasonable. As such, Telegraph is estopped from attacking that conduct. The resolution of this argument necessitates a recitation of the chronological course this controversy has taken in both State and Federal courts.

On June 2, 1980, Telegraph filed lawsuits in the circuit court of Cook County (No. 80—CH—3860) and the United States District Court for the Northern District of Illinois (No. 80—C—2792) (original Federal action). The original Federal action involved a determination of whether the statutory requirements for the appointment of an FSLIC receivership had been satisfied. (12 U.S.C. sec. 1729(c)(2) (1976).) In both the State and Federal actions, Telegraph sued the Commissioner, as well as the FHLBB and the FSLIC. Upon petition of the Federal defendants, the State action was removed to Federal court (No. 80—C—2782) (removed Federal action). The removed Federal action was dismissed, on June 12, 1980, for lack of derivative jurisdiction. The court refused to remand the State-law claim against the Commissioner. It found that the State "emergency" issue was "part and parcel" of the claim against the FSLIC and FHLBB, over which the State court had no jurisdiction. The same day that the removed Federal action was

dismissed, therefore, Telegraph filed a new State court action (No. 80—CH—4170). This new State action, which is the subject of the instant appeal, named only the Commissioner as a defendant, bringing the action pursuant to section 7—12 of the Act (Ill. Rev. Stat. 1979, ch. 32, par. 852).

Telegraph, by its complaint filed in State court on June 12, 1980, contended that "no emergency existed with respect to [the Association] and further the Commissioner did not purport to make a valid finding that such an emergency existed." As such, Telegraph maintained that the Commissioner acted in abuse of his discretion by taking custody of the Association without advance written notice. (Ill. Rev. Stat. 1979, ch. 32, par. 848.) Accordingly, injunctive and declaratory relief were sought.

The Commissioner's motion to dismiss was granted by the trial court. The transcript from the hearing on that motion indicates that the trial court, relying on the June 12 dismissal of the removed Federal action, found that the Federal court had assumed jurisdiction on the merits of the case. In addition, the court concluded that injunctive relief was no longer possible under the circumstances of the case. Finally, it indicated that if an action were sustained in the State court, the action would be in damages. The judge, however, declined to grant Telegraph's oral motion to transfer the complaint to the law division.

At this point, therefore, Telegraph was limited to its original Federal action (No. 80—C—2792) wherein State and Federal statutory violations were asserted. This action was ultimately resolved in favor of the Federal defendants. The Federal court, however, refused to consider the State-law claim. In a February 19, 1982, order for a status hearing, the district court indicated that it was of the opinion that it should refuse to exercise pen-

dent jurisdiction over the State-law claims since they involved "difficult questions of state law which are of first impression." (*Telegraph Savings & Loan Association v. Federal Savings & Loan Insurance Corp.* (N.D. Ill. 1982), 564 F. Supp. 880 (order for status hearing).) Further, in an order dated March 18, 1982, the district court found that the State counts involve "novel questions of state statutory construction which are neither addressed nor resolved" by the findings of the district court on the other counts. (*Telegraph Savings & Loan Association v. Federal Savings & Loan Insurance Corp.* (N.D. Ill. March 18, 1982), No. 80—C—2791.) As such, it dismissed the State-law issues without prejudice. Finally, in the Seventh Circuit opinion the court concluded:

> "The fact that [the district court] dismissed the separately pleaded state law counts without prejudice merely indicates that these claims are independent of Telegraph's challenge to a federal receivership under federal law. The dismissal cannot be read as a ruling on the validity of the state claims." *Telegraph Savings & Loan Association v. Schilling* (7th Cir. 1983), 703 F.2d 1019, 1029-30.

Because the Federal court refused to assert pendent jurisdiction over the counts based entirely on State law, and dismissed the claims without prejudice for lack of jurisdiction, the appellate court, in the instant case, determined that Telegraph was entitled to a State-court adjudication of those issues. Accordingly it reversed the circuit court's dismissal of the action, stating:

> "Whatever the binding effect of the opinion of the Court of Appeals [Seventh Circuit] may be on certain facets of the litigation, it does not necessarily foreclose a finding by the State court of a lack of an emergency. *** Telegraph has a right to have its State law claims resolved in a State court." 115 Ill. App. 3d 331, 340.

We agree.

The doctrine of collateral estoppel has been defined

by this court as applying "when a party or someone in privity with a party participates in two separate and consecutive cases arising on *different* causes of action and some controlling fact or question material to the determination of both causes has been adjudicated against that party in the former suit by a court of competent jurisdiction. [Citation.] The adjudication of the fact or question 'in the first cause will, if properly presented be conclusive of the same question in the later suit' [citation], but 'the judgment in the first suit operates as an estoppel only as to the point or question *actually litigated* and determined and not as to other matters which might have been litigated and determined.' " (Emphasis in original.) (*Housing Authority v. Young Men's Christian Association* (1984), 101 Ill. 2d 246, 252.) When determining whether the doctrine of collateral estoppel precludes the resolution of the State-law claim, therefore, the only relevant inquiry is whether the Federal court decided that an emergency existed. We need not speculate as to whether the factual inquiry regarding the State "emergency" issue was ever resolved by the Federal courts. The Federal district court, as well as the Seventh Circuit court, expressly recognized that the State-law claims were distinct from Telegraph's challenge of the Federal receivership and declined to address the State claims. It follows, therefore, that the doctrine of collateral estoppel will not act as a bar to a State court adjudication of the emergency issue.

In the third issue raised by the Commissioner, he maintains that Telegraph's complaint fails to state a cause of action under section 7—12 of the Act (Ill. Rev. Stat. 1979, ch. 32, par. 852). The complaint filed on June 2, 1980, named only Telegraph, the association, as plaintiff. The statute authorizes a suit to be filed against the Commissioner by "the directors or officers of the association or the trustees or liquidators thereof ***." As

such, the Commissioner maintains that Telegraph lacks standing to sue pursuant to section 7—12 of the Act. While the suit filed on June 12, 1980, named the officers and directors of Telegraph, as well as the association, as party plaintiffs, this action was filed past the 10-day period (custody occurred on May 22, 1980) mandated by section 7—12 of the Act. Thus, the Commissioner contends, the officers and directors, the only proper party plaintiffs, failed to timely seek relief. We do not agree.

Telegraph's complaint, filed June 2, 1980 (No. 80—CH—3860), while brought only in the name of the Association, was filed within the 10-day period required by section 7—12 of the Act. When this action was removed to Federal district court (No. 80—C—2782), through no fault of Telegraph but upon petition of the Federal defendants, the time for filing an action challenging the Commissioner's actions was tolled. Thus, when Telegraph filed the instant State action (No. 80—CH—4170) on June 12, 1980, the very day the removed Federal action was dismissed, it was as if Telegraph was filing on the 10th day following the take-over.

Further the 10-day limitation period mandated by section 7—12 should be analyzed in view of its purpose. As succinctly stated in a 1954 decision of this court:

"The basic policy of [statutes of limitation] is to afford a defendant a fair opportunity to investigate the circumstances upon which liability against him is predicated while the facts are accessible. *** As observed by Mr. Justice Holmes in *New York Central Railroad v. Kinney*, 260 U.S. 340, 342, 'Of course an argument can be made on the other side, but when a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct, the reasons for the statute of limitations do not exist, and we are of opinion that a liberal rule should be applied.' " (*Geneva Construction Co. v. Martin Transfer & Storage Co.* (1954), 4 Ill. 2d 273, 289-90.)

Under the circumstances of the instant case, we find that the objective of the 10-day limitation period of section 7—12 of the Act has been fully served.

Finally, the Commissioner argues that the appellate court erred in finding that the issue of damages was not waived by Telegraph. While conceding that injunctive relief was not viable, because the Commissioner no longer had custody of Telegraph, the appellate court concluded that Telegraph was not necessarily barred from relief. Section 7—12 of the Act, in addition to providing for injunctive relief, provides in relevant part: "If upon a hearing thereon, the court finds that such grounds [for taking custody] did not or do not then exist, it may enter an appropriate order ***." (Ill. Rev. Stat. 1979, ch. 32, par. 852.) The court found that this provision "may give a right to damages." (115 Ill. App. 3d 331, 340.) The court cited the Seventh Circuit opinion, *Telegraph Savings & Loan Association v. Schilling* (7th Cir. 1983), 703 F.2d 1019, which also recognized the possible right to damages. In a footnote in the Seventh Circuit opinion, the court observed:

> "Although it held that the federal appointment could not be challenged under state law, the district court [564 F. Supp. 862, 880] noted that if either the state or federal authorities violated state law, Telegraph may have an action for damages under Illinois law, Ill. Rev. Stat. ch. 32, sec. 852, or under federal law, 42 U.S.C. sec. 1983." 703 F.2d 1019, 1024 n.4.

Further, the appellate court, in the instant case, held that Telegraph had not waived its right to such relief because it failed to specifically seek damages or submit a proposed amendment. Telegraph made two general requests to amend its complaint, in a reply to the Commissioner's brief in support of his motion to dismiss and orally during the hearing on the motion to dismiss. During that hearing, the court noted "that if an action were

sustained in the State Court the action would be in damages." In addition, the court stated "that if the suit was sustainable in the Circuit Court at the present time it would be a matter for the Law Division rather than for the Chancery Division." Nevertheless, the court denied Telegraph's oral motion to transfer the action to the law division and granted the motion to dismiss.

Section 34 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 34) provides that "the prayer for relief does not limit the relief obtainable" except in the case of default judgments and cases involving prejudice to the adverse party by reason of surprise. " 'Courts may disregard labels, and may grant relief to which a plaintiff is entitled upon the evidence.' " (*Nugent v. Collins* (1980), 89 Ill. App. 3d 874, 879.) It would seem that the same discretion would be allowed to a reviewing court when reversing and remanding a cause previously dismissed. Based on the pleadings and in light of Telegraph's two requests to amend as well as the judicial commentary on the possible right to damages, we do not find that the Commissioner will be prejudiced by allowing Telegraph to amend its complaint on remand. Accordingly, we find that the appellate court did not err in affording Telegraph "the opportunity to move to amend [on remand] to specifically seek damages and to transfer the cause to the law division." 115 Ill. App. 3d 331, 341.

For the reasons stated herein, the judgment of the appellate court reversing the dismissal of the circuit court and remanding for further proceedings, is affirmed.

*Judgment affirmed.*

JUSTICE UNDERWOOD, dissenting:

I do not share my colleagues' opinion that the doctrine of collateral estoppel is inapplicable here, nor do I believe that an action for damages is permissible in these

circumstances.

The majority cites section 7—12 of the Illinois Savings and Loan Act (Ill. Rev. Stat. 1979, ch. 32, par. 852, now Ill. Rev. Stat. 1983, ch. 17, par. 3195) to support its conclusion that Telegraph could proceed with a State court action for damages. However, that section, which is entitled in part "Notice of Custody—Action to *Enjoin*" (emphasis added), provides:

> "*** If the contention is made that the Commissioner has no legal grounds for taking custody of the association or trust, the directors or officers of the association or the trustees *** may file a complaint *** to *enjoin* further custody. The court thereupon shall cite the Commissioner to show cause why further custody should not be *enjoined*. If upon a hearing thereon, the court finds that such grounds did not or do not then exist, it may enter an appropriate order in accordance with the findings of fact ***." (Emphasis added.)

It seems to me that this provision unambiguously limits the plaintiff association to injunctive relief. There is simply nothing to suggest that damages are recoverable. The term "appropriate order," emphasized by the majority, obviously refers to the provisions of an order granting or denying the injunction, as that is the only purpose of the hearing. Too, if the General Assembly had intended to provide for damages in these circumstances, it seems likely that it would have explicitly stated so, for "[t]he body of the statute cannot encompass a broader subject than is stated in the title." *People v. Tibbitts* (1973), 56 Ill. 2d 56, 64; 1A Sutherland, Statutory Construction sec. 18.01 *et seq.* (4th ed. 1972).

However, even if I were to concede that damages are recoverable under section 7—12, the Federal court proceedings involved here would, in my judgment, bar Telegraph's State court action on collateral estoppel grounds. As the majority points out, to prevail in its suit

for damages Telegraph must prove that no "emergency" existed which could have justified the Commissioner's taking custody of the institution without written notice. Although the Illinois Savings and Loan Act does not specify what constitutes an "emergency," the Federal district court found that Telegraph was on the brink of financial collapse and that the take-over was imperative to safeguard the depositors' funds. The court noted:

> "From July 1, 1979, to April 30, 1980, Telegraph's book net worth steadily declined from nearly $5 million to $450,000.00. The operational losses for April 1980 alone exceeded $734,000.00. On May 19, Telegraph's comptroller made the following projection:
>
> 'Based upon my review of the books and records of Telegraph as of May 19, 1980 and taking into consideration my knowledge of the financial circumstances of Telegraph, I estimate that for the period May 1 through 19, 1980, Telegraph had lost $591,778.29 and I projected that for the entire month of May, Telegraph would lose $983,147.86.' [citation.] On the basis of the projections of Telegraph's own comptroller, Telegraph had a negative book net worth of approximately $142,000.00 on May 19 and of approximately $240,000.00 on May 22." (*Telegraph Savings & Loan Association v. Federal Savings & Loan Insurance Corp.* (N.D. Ill. 1982), 564 F. Supp. 880, 888-89.)

In addition, the Seventh Circuit Court of Appeals observed that "[t]he evidence overwhelmingly establishes that Telegraph was in precarious financial condition and was continuing to decline." *Telegraph Savings & Loan Association v. Schilling* (7th Cir. 1983), 703 F.2d 1019, 1025.

Curiously, the majority apparently does not believe these findings would be binding or relevant in a State court proceeding aimed at determining Telegraph's financial status. Of course, to actually recover damages Telegraph will also have to show that it has suffered

some loss that can be monetarily compensated. Should our courts also disregard the Federal findings on that issue? I think it is abundantly clear that any State court proceeding will involve precisely the same factual issues that have already been resolved by the Federal courts. In fact, a more appropriate case for application of the collateral estoppel doctrine is difficult to imagine.

I would accordingly reverse the judgment of the appellate court and affirm the judgment of the circuit court of Cook County.

RYAN, C.J., and SIMON, J., join in this dissent.

JUSTICE SIMON, also dissenting:

While I join Justice Underwood's disagreement with the majority's decision to allow an additional trial for Telegraph, I would like to point to other areas of dissatisfaction I have with the majority opinion. First, I agree with Justice Underwood's analysis of the collateral-estoppel issue, which requires a complete bar of a trial at the State level. Even if the majority view that the dismissal of the State-law counts indicates that these are claims independent of the Federal action is accepted, I do not believe the circuit court has a free hand at this new trial to allow adjudication of all facts relating to whether an emergency situation existed at the time of the takeover. Collateral estoppel acts as a bar to relitigation of "controlling fact[s] or question[s] material to determination" of the causes of action brought by the same party. (Slip op. at 7, citing *Housing Authority v. Young Men's Christian Association* (1984), 101 Ill. 2d 246, 252.) It is clear to me that the factual determinations of the Federal courts concerning the financial stability of Telegraph at the time of the takeover cannot be relitigated, even accepting the majority's allowance of another trial which deals exclusively with the emergency issue. Instead, all

factual issues relevant to the emergency question may have already been established at the trial in the United States district court. All that would be left for the circuit court, if anything, would be the legal judgment of whether these facts constituted an emergency situation under the statute. While I feel an emergency existed, I do not believe the majority opinion allows for anything more than this limited inquiry.

Second, I agree with Justice Underwood's judgment that no damages are contemplated by section 7—12 of the Illinois Savings and Loan Act (Ill. Rev. Stat. 1979, ch. 32, par. 852, now Ill. Rev. Stat. 1983, ch. 17, par. 3195). I also believe that this question has been left open by the majority for a later determination by the circuit court. The majority has only afforded Telegraph the opportunity to amend its complaint and seek damages. While I believe this result is incorrect, the majority opinion does not foreclose a finding by the circuit court that an action for damages is improper.

Moreover, the damage issue involves numerous issues, as yet unexplored, which may immunize the defendant with regard to his actions as commissioner. For example, the defendant should not be personally liable for an inadvertent technical violation of the statute. Instead, a showing of bad faith or a wilful violation of the statute's requirements would be necessary. See Ill. Rev. Stat. 1979, ch. 85, par. 1—101 et seq.

Finally, I am disturbed by the majority's conclusion because it may lead to future losses to depositors. The savings and loan industry is regulated by both Federal and State authorities. While State regulation is important, the insurance of depositor accounts is provided by the Federal Savings and Loan Insurance Corporation (FSLIC) in conjunction with the Federal Home Loan Bank Board (FHLBB). If our commissioner of savings and loan associations is held personally accountable for

186

this cooperation with the controlling Federal officials, our commissioner may react to this decision in the future by refusing to cooperate with them. Without such cooperation, purchase and assumption transactions like the one negotiated in this takeover will never occur. The result will be forced closings by the FHLBB, and the FSLIC will be required to provide cash payments to individuals only in amounts insured by Federal law. Those investors with more than the insured amount will lose that money instead of retaining the full amount of their savings as happened in the Telegraph situation. This result is unsound and detrimental to those who are savings and loan depositors.

RYAN, C.J., and UNDERWOOD, J., join in this dissent.