JERRY SAMPSON, Adm'r of the Estate of Ray Sampson, Deceased, Plaintiff-Appellant, v. CAPE INDUSTRIES, LIMITED, *et al.*, Defendants (Zurich Insurance Company, Garnishee-Appellee).

Fourth District   No. 4—91—0561

Opinion filed June 4, 1992.

James Walker, Ltd., of Bloomington, for appellant.

William R. Brandt, of Livingston, Barger, Brandt & Schroeder, of Bloomington, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

On June 28, 1991, summary judgment was granted in favor of defendant Zurich Insurance Company (Zurich) against plaintiff Jerry Sampson, administrator of the estate of Ray Sampson (Sampson). Although the motion for summary judgment alleged collateral estoppel, the trial court granted summary judgment finding that no issue of material fact existed as to the noncooperation of Cape Industries, Limited (Cape), in its defense under an insurance contract between Zurich and the named insured, North American Asbestos Corporation (NAAC). We affirm the granting of summary judgment in favor of Zurich.

On February 20, 1980, Ray Sampson filed a complaint to recover damages for mesotheloioma caused by his exposure to asbestos. Cape, a registered corporation in England, was named as a defendant. In March 1980, Ray Sampson died and his son, Jerry, was appointed administrator of his estate. In that capacity, Jerry Sampson filed plaintiff's third-amended complaint for the wrongful death of his father naming Cape as a defendant. Cape was served by mail with summons and complaint on March 3, 1980. On September 9, 1980, Sampson's attorney sent Zurich a copy of the complaint and a letter advising Zurich of the pending lawsuit. This letter also indicated Sampson was aware of an indication by Zurich that it would not defend Cape in this matter and advised against doing so. Default judgment was entered against Cape on May 1, 1981. On February 20, 1984, Sampson's attorney sent a letter to Zurich informing it of the default judgment against Cape and of Sampson's intent to file a garnishment action against Zurich for any insurance proceeds. On March 14, 1984, after Sampson had proved his damages, judgment was entered against Cape in the amount of $245,590.92.

Thereafter, on March 22, 1984, Sampson filed a garnishment action against Cape and Zurich as garnishee. The garnishment affidavit stated that Zurich had issued two insurance policies, with NAAC listed as the named insured, providing insurance coverage for the claims alleged in the amended complaint. Cape was alleged to be an "additional insured" under the policies issued by Zurich to NAAC by virtue of the fact that Cape was a stockholder of NAAC and was al-

leged to have acted in that capacity when selling asbestos owned by NAAC to the operators of the asbestos plant where Sampson worked. Zurich has maintained throughout these proceedings that Cape is not an insured under these policies and would not have coverage.

In McLean County case No. 80—MR—26, the Insurance Company of North America (INA) brought a declaratory judgment action against Cape and NAAC, among others, for asbestos-related injuries. Summary judgment was granted to INA in that case based on Cape's breach of the cooperation clause in an insurance contract between INA and NAAC. In McLean County case No. 80—MR—53, INA brought another declaratory judgment action against Cape, NAAC and Sampson, among others, for asbestos-related injuries. Summary judgment was granted in favor of INA there based on collateral estoppel on the fact of Cape's breach of the cooperation clause of the insurance contract in McLean County case No. 80—MR—26.

Finally, in McLean County case No. 80—CH—43, Centennial Insurance Company (Centennial) and Westchester Fire Insurance Company (Westchester) filed suit against Cape, NAAC, Zurich, and Sampson, among others. Summary judgment was granted for both Westchester and Centennial in that case based on Cape's breach of the cooperation clause in those insurance contracts between Centennial and NAAC and Westchester and NAAC, as well as collateral estoppel based on case Nos. 80—MR—26 and 80—MR—53. With respect to Westchester's motion for summary judgment, the trial court found there was no question of material fact that Cape had failed to cooperate with Westchester and this action had prejudiced Westchester, thereby relieving it of any liability to Cape. With respect to Centennial's motion for summary judgment, the trial court concluded there was no genuine issue of material fact that Cape had breached its duty to cooperate with Centennial by instructing it not to act or appear on its behalf thereby forfeiting any insurance coverage under the policy. The trial court further ordered "all of the defendants [which included Sampson] are collaterally estopped to relitigate the issue as to the breach of Cape Industries, Inc. [sic], to cooperate in its defense, thereby forfeiting any right to insurance coverage it may have had by reason of the judgments entered in McLean County cause Nos. 80—MR—53 and 80—MR—26."

Cape has never tendered the defense of this lawsuit to Zurich. In April 1980, Cape sent a letter to the attorney for INA specifically stating that neither INA nor "any other insurer of NAAC in a similar position have [sic] any instructions to act or appear on behalf of this Company in any proceedings in Illinois or any other state of the

United States." Cape sent a similar letter in May 1980 to the attorneys for Westchester. Attorneys for Centennial received a telegram from Cape on August 7, 1980, instructing it and all other insurers of NAAC not to act or appear on behalf of Cape in any suit in Illinois. Finally, on November 5, 1986, Zurich received a letter from Cape confirming its previous instructions to INA, Centennial and Westchester, and now specifically to Zurich, not to act or appear on behalf of Cape in any lawsuit pending in Illinois. Except for the November 5, 1986, letter from Cape to Zurich, which is in the common law record, all of this correspondence was attached to Zurich's motion for summary judgment.

In the present case, in May 1991, Zurich filed a motion for summary judgment alleging an issue raised in its affirmative defenses was whether Cape had instructed it not to appear on its behalf and had thereby breached its duty to cooperate with Zurich thus forfeiting any right to insurance coverage under the policy issued to NAAC by Zurich. Zurich further alleged that since Zurich and Sampson were both defendants in case No. 80—CH—43, Sampson was collaterally estopped from raising the issue of Cape's forfeiture of insurance coverage by virtue of the orders entered in that case on August 24, 1982.

On June 28, 1991, the trial court granted Zurich's motion for summary judgment. The court noted the findings made in case Nos. 80—MR—26, 80—MR—53 and 80—CH—43, and concluded that Zurich had notice, by virtue of being a defendant in case No. 80—CH—43 when the motions for summary judgment by Centennial and Westchester were filed, of Cape's declared intent not to cooperate with any of its insurers. The court found "there is no issue of material fact as to Cape refusing to cooperate with any and all insurers, which would include Zurich *** Zurich is entitled to a judgment as a matter of law based upon the noncooperation of Cape."

Although not specifically stating collateral estoppel applied, the trial court based its ruling granting summary judgment in favor of Zurich on the following facts: (1) the telegram from Cape to Charles H. Lankheit, regional claims manager for Centennial, which was part of the record in case No. 80—CH—43, and which stated: "No insurers of NAAC have any authority to act or appear on behalf of Cape Industries in the above or any other proceedings"; (2) the affidavit of Lankheit, which stated that he was familiar with the proceedings in case No. 80—CH—43 and knew Cape had sent a telegram to Centennial instructing it not to enter an appearance on its behalf in that case; (3) that Zurich was a party in case No. 80—CH—43 when Centennial's motion for summary judgment was filed, with the supporting

documents, including the telegram and Lankheit's affidavit, which gave notice to Zurich of Cape's noncooperation; (4) the issue of Cape's noncooperation with all insurers was an issue in case No. 80—CH—43; and (5) it found nothing in the record to support Sampson's position that Cape would cooperate with Zurich. Sampson filed this notice of appeal on July 26, 1991.

■ At oral argument, Sampson argued that the trial court erred in granting summary judgment in favor of Zurich by finding there was no genuine issue of material fact as to Cape's refusing to cooperate with any insurers. Sampson suggests, since Zurich's motion for summary judgment only raised the issue of collateral estoppel, he was never afforded the opportunity to address the issue of Cape's noncooperation. Inasmuch as we conclude Sampson was collaterally estopped from relitigating the issue of Cape's noncooperation, an issue Sampson did have an opportunity to address, we need not respond to this contention. This court can sustain the decision of the circuit court on any grounds which are called for by the record regardless of whether the circuit court relied on those grounds and regardless of whether the circuit court's reasoning was correct. *Beckman v. Freeman United Coal Mining Co.* (1988), 123 Ill. 2d 281, 286, 527 N.E.2d 303, 305.

■ Sampson next asserts Zurich cannot now rely on the affirmative defense of Cape's noncooperation because Zurich failed to contact Cape and notify it of its obligation to defend Cape in this matter. However, Sampson cites no authority to support this contention and, as we have previously noted, "we have not found a case indicating an insurance company has a responsibility to notify the insured of its duty to defend or pay for the defense." (*American Family Mutual Insurance Co. v. Blackburn* (1991), 208 Ill. App. 3d 281, 287, 566 N.E.2d 889, 893.) Thus, we do not believe Zurich has waived its defense of Cape's noncooperation.

Finally, Sampson contends the trial court erred in applying collateral estoppel against him based on the trial court's order in case No. 80—CH—43, since the insurance contract between Zurich and NAAC was not in issue in that case. Sampson suggests one of the three requirements necessary to utilize the doctrine of collateral estoppel, namely identical issues between the prior adjudication and current litigation, is missing.

■ The only pertinent questions for the utilization of collateral estoppel are whether the issue decided in the prior adjudication is identical with the one presented in the suit in question, whether there has been a final judgment on the merits, and whether the party

against whom estoppel is asserted is a party or in privity with a party to the prior adjudication. (*Illinois State Chamber of Commerce v. Pollution Control Board* (1979), 78 Ill. 2d 1, 7, 398 N.E.2d 9, 12; *In re Owens* (1988), 125 Ill. 2d 390, 399-400, 532 N.E.2d 248, 252.) The party against whom estoppel is asserted must have had a full opportunity to litigate the issue in question. (*Wolford v. Owens-Corning Fiberglas Corp.* (1988), 176 Ill. App. 3d 312, 314, 530 N.E.2d 721, 722.) Collateral estoppel is most often asserted by a defendant in an effort to preclude relitigation of an issue which the plaintiff has previously litigated against another defendant and lost. *Mohn v. International Vermiculite Co.* (1986), 147 Ill. App. 3d 717, 721, 498 N.E.2d 375, 377.

 ■ Since summary judgment was granted in favor of Zurich, there was a final judgment on the merits. (See, *e.g.*, *Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 505 N.E.2d 314.) Furthermore, the party against whom estoppel is asserted, Sampson, was a party in the prior adjudication in case No. 80—CH—43. Thus, the only remaining requirement is whether the issue presented in case No. 80—CH—43 was the same issue presented to the trial court in the present case.

The trial court in case No. 80—CH—43 granted summary judgment to Centennial for two reasons: (1) there was no genuine issue of material fact that Cape had breached its duty to cooperate with Centennial in its defense by instructing Centennial not to enter an appearance in any lawsuit filed against it in McLean County; and (2) that all defendants were collaterally estopped from relitigating the issue of Cape's breach of its duty to cooperate in its defense, thereby forfeiting any rights to insurance coverage from judgments in case Nos. 80—MR—53 and 80—MR—26. Also in case No. 80—CH—43, the trial court granted summary judgment in favor of Westchester since there was no question of material fact that Cape had failed to cooperate in its defense by specifically instructing Westchester not to enter an appearance for it, thereby waiving any right to insurance coverage. Summary judgment was granted in this case since the trial court found there was no issue of material fact as to Cape's noncooperation.

Thus, in case No. 80—CH—43 and in the present case, the relevant issue was Cape's noncooperation in its defense and the waiver thereby of any insurance coverage under any of the insurance contracts. Sampson attempts to distinguish these issues by noting that different insurance policies were considered in the two cases. We conclude this distinction is irrelevant. The policies were similar in that they each contained nearly identical clauses describing Cape's duty to

cooperate in its defense and the effect of the failure to do so. We find support for our conclusion in *Service Systems Corp. v. Van Bortel* (1988), 174 Ill. App. 3d 412, 528 N.E.2d 378. There, an employer brought suit against its former officers and employees seeking an enforcement of a covenant not to compete and a noncompetition provision in their employment agreements. The court held a Federal court's declaratory judgment involving another employee collaterally estopped the employer from relitigating the issue of whether the covenant not to compete was enforceable. The court noted, although different employment agreements were involved in the two cases, the language of the covenants not to compete was identical and that the employees involved held similar positions within the employer's company. (*Service Systems Corp.*, 174 Ill. App. 3d at 418, 528 N.E.2d at 382.) Thus, the court found the issues identical for collateral estoppel purposes.

For further support, we refer to our decision in *Wolford*. There, the plaintiff brought an action against the defendant, Owens-Corning Fiberglass Corporation, for intentional torts relating to exposure to asbestos dust. Owens-Corning filed a motion to dismiss the complaint which was granted by the trial court. On appeal before us, plaintiff contended Owens-Corning was collaterally estopped from challenging the sufficiency of the complaint because of the decision in *Handley v. Unarco Industries, Inc.* (1984), 124 Ill. App. 3d 56, 463 N.E.2d 1011. Owens-Corning was a defendant in *Handley*.

This court agreed with plaintiff and found Owens-Corning was collaterally estopped from challenging the sufficiency of the complaint. We noted:

> "The complaints in the present case and in *Handley* are sufficiently alike so as to be considered identical. The counts are voiced in language indicating intentional torts, obviously for the purpose of avoiding the exclusive provisions of the Workers' Occupational Diseases Act (Ill. Rev. Stat. 1985, ch. 48, pars. 172.40 through 172.46). The issue of collateral estoppel was presented to the trial court by the indication of the similarities of pleadings and by the furnishing of the *Handley* appellate opinion." *Wolford*, 176 Ill. App. 3d at 314, 530 N.E.2d at 722.

Likewise, here, although different insurance policies were in issue, the language in each indicating the forfeiture of coverage because of a failure to cooperate was similar. The trial court had before it these various insurance policies as well as the summary judgment motions and orders in case No. 80—CH—43. We find the issue in case No. 80—CH—43

and the present case sufficiently identical for collateral estoppel purposes.

Moreover, Sampson as a defendant in case No. 80—CH—43 was aware of Cape's intent not to cooperate. As early as 1980, when Sampson's attorney sent a letter to Zurich, Sampson was aware that Cape might be uncooperative with its insurers. That letter specified three reasons why Zurich might choose not to defend Cape and the possible consequences of each course of action. One of those reasons included Cape's failure to tender the defense to Zurich. A reasonable inference from this statement is that Cape had manifested an intent not to cooperate with Zurich by refusing to notify it of the claim and by failing to tender the defense.

Summary judgment was entered in case No. 80—CH—43 in 1982, which was prior to Sampson's 1984 proof of damages in the present case. The correspondence of Cape regarding its intention not to cooperate with the other insurers was attached to the motions for summary judgment by Centennial and Westchester, copies of which Sampson received. Sampson even had specific notice of Cape's intent not to cooperate with Zurich. Attached to Zurich's trial brief regarding its affirmative defenses was the letter from Cape to Zurich specifically reiterating Cape's previous instructions to INA, Centennial, and Westchester, and now to Zurich, not to enter an appearance on its behalf in any case in McLean County. Thus, we conclude that Sampson had notice of Cape's intent not to cooperate with any insurer in Illinois and had an opportunity to litigate this issue in case No. 80—CH—43.

The policies underlying *res judicata* and collateral estoppel include, *inter alia*, certainty and finality to litigation and consistency in judgments. *Hammond v. North American Asbestos Corp.* (1991), 207 Ill. App. 3d 556, 564, 565 N.E.2d 1343, 1348.

The policies favoring finality of litigation and judicial economy will best be served by concluding that Sampson is collaterally estopped from relitigating the issue of Cape's noncooperation under this insurance contract. This particular lawsuit has been ongoing for over 10 years and has been to our court once before. (*Sampson v. Cape Industries Ltd.* (1989), 185 Ill. App. 3d 83, 540 N.E.2d 1143.) As a party defendant, Sampson had the opportunity to litigate the issue of Cape's noncooperation in case No. 80—CH—43. Zurich has suffered prejudice since a default judgment was entered against Cape when Zurich had no opportunity to defend Cape in the suit brought by Sampson. Zurich was never notified of the suit by Cape and Cape specifically stated no insurer, including Zurich, was to enter an appear-

ance on its behalf or defend it in any lawsuit. There is no question that Cape breached its duty to cooperate and thus all of its insurers are relieved of liability under the policy. If Zurich has no liability under the contract, Sampson cannot garnish any proceeds of the contract.

Therefore, for the foregoing reasons, we hold Sampson collaterally estopped from relitigating the issue of Cape's breach of the cooperation clause in the insurance contract between Zurich and NAAC. The trial court's granting of summary judgment in favor of Zurich is affirmed.

Affirmed.

COOK and LUND, JJ., concur.