DANUTA ERICKSEN, as Adm'x of the Estate of Bozena Bajaj and as Assignee of Certain Rights of Kenneth Moore, Plaintiff-Appellant, v. RUSH-PRESBYTERIAN-ST. LUKE'S MEDICAL CENTER, Defendant-Appellee.

First District (5th Division)   No. 1—95—3490

Opinion filed May 2, 1997.—Rehearing denied June 24, 1997.

Feiwell & Meenan (Daniel C. Meenan, Jr., of counsel), and Kralovec, Jambois & Schwartz (John B. Kralovec and Monica L. David, of counsel), both of Chicago, for appellant.

Davis, Miner, Barnhill & Galland, P.C., of Chicago (George F. Galland, Jr., of counsel), for appellee.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

This appeal involves one of three successive and distinct Cook County circuit court actions. The initiating litigation by plaintiff was for medical malpractice, followed by supplementary proceedings in which she sought assets of the judgment debtor, and the last being a contract action by plaintiff as an assignee of the judgment debtor. Although only the contract action is presently being appealed, each will be explained briefly for purposes of understanding the nature of the present controversy.

Plaintiff, Danuta Ericksen, as administratrix of the estate of Bozena Bajaj (Ericksen), appeals the circuit court order in 94 L 13645, the contract action (contract action), in which her claim as assignee of her judgment debtor's, Dr. Kenneth L. Moore's (Dr. Moore) employment contract rights for indemnity against his former employer, Rush-Presbyterian-St. Luke's Medical Center (Rush), was dismissed.

The circuit court's basis for dismissing Ericksen's contract action was that a preceding court order in the supplementary proceedings (84 L 13737) (citation action) had ruled that a release signed by Ericksen and Rush barred Ericksen from proceeding any further in her pursuit of Dr. Moore's indemnity claim against Rush.

Ericksen sued Dr. Moore, her decedent's treating physician, and Rush, in 84 L 13737, a medical malpractice action (malpractice action), after her decedent died on January 7, 1984, in Rush's emergency room. Decedent first saw Dr. Moore in 1980, complaining of severe headaches, which Dr. Moore diagnosed as migraines. He treated decedent for her headaches during the time he worked as a resident physician for Rush, a period that extended from November 5, 1980, to June 30, 1981. Dr. Moore continued treating her thereafter as his private patient until January 5, 1984, when she was taken to Rush's

emergency room. An autopsy revealed that she had suffered from hydrocephalus, a treatable brain condition.

The record reveals that when he began working for Rush, Dr. Moore entered into an understanding with Rush under a "House Staff Officer's Agreement," in which Rush promised to pay for legal obligations incurred by the doctor during the course of his Rush employment. The House Staff Officer's Agreement provided Dr. Moore with potential coverage under another document, entitled "Amended and Restated General/Professional Liability Loss Fund Trust Agreement" (Trust Fund). These documents evidenced up to $2 million in indemnification coverage per occurrence and excess insurance of $5 million, or more, for liability resulting from malpractice claims. The Trust Fund was a private resource fund Rush established to insure itself and its employees against malpractice liability claims. Continental Illinois National Bank and Trust Company of Chicago (Continental) served as its fund trustee.

Ericksen was not apprised of the Trust Fund's existence or its potential benefit to Dr. Moore at the time of her settlement with Rush in the malpractice action in 1989, nor until after the jury's verdict against Dr. Moore and judgment on that verdict had been entered on June 12, 1991, although Ericksen previously had made inquiry of Rush as to potential malpractice coverage for Dr. Moore. Ericksen was not advised of the existence of the House Staff Officer's Agreement until Rush attached a copy of it to Rush's motion to dismiss the present contract action.

Ericksen's malpractice action against Dr. Moore was tried to a jury in 1991. At trial, Dr. Moore was represented by attorneys employed through his private malpractice insurance carrier, Medical Protective Company of Fort Wayne, Indiana (Medical Protective). Expert witnesses testified that Dr. Moore deviated from the standard of care during the entire time he treated decedent between 1980 and 1984, asserting that Dr. Moore could have diagnosed the cause of decedent's headaches correctly as early as November 1980 by running a CT scan and could have treated her condition, which might have prevented her death. A jury returned a verdict against Dr. Moore, awarding Ericksen more than $5 million in damages.

Meanwhile, Rush had retained its own attorneys after the initial lawsuit was filed. Although Rush did not participate in Dr. Moore's malpractice trial, counsel for Dr. Moore kept Rush's attorney informed of the status of the case, without telling Ericksen's attorney about these discussions. Rush's legal department also sent written confirmation of Dr. Moore's indemnitee status to Medical Protective, acknowledging Dr. Moore's coverage by Rush for any suits arising from the time he worked at Rush.

As previously noted, in July 1989, two years before trial, Ericksen and Rush entered into a release agreement. In return for a cash settlement, Ericksen agreed to release Rush in the malpractice action, "its agents, servants, employees, officers, insurers, successors and assigns, *** from all claims and demands *** arising or growing out of an *accident, casualty or event which occurred on or about the 5th day of January, 1984*" (emphasis added) (E-R Release). The circuit court approved the settlement, in which Rush would pay Ericksen $36,123 and her attorney $12,000, and dismissed her claim against Rush.

In a posttrial motion before the trial judge, Dr. Moore argued for the first time that the E-R Release also released him from liability as a former Rush employee, and he was given leave to file an affirmative defense based upon that release. In September 1991, the circuit court denied Dr. Moore's motion, holding among other things that Ericksen's settlement agreement with Rush did not release Dr. Moore from liability to Ericksen and the estate. The court made this order final and appealable.

Ericksen and Dr. Moore subsequently entered into a "Covenant Not to Execute Against Certain Assets" (Covenant). Dr. Moore authorized payment by Medical Protective to the estate of $1,030,000, the maximum amount of coverage provided. At the same time, Dr. Moore assigned his indemnity claim against Rush to Ericksen as partial satisfaction of the remainder of the $5 million judgment, in exchange for her promise not to pursue Dr. Moore's personal assets.

When Rush learned of the Covenant, it moved to intervene in 84 L 13737, the initial litigation. The circuit court then attempted to clarify its previous order, denying the posttrial motion, but explaining that it "did not determine and was not intended to determine" whether the E-R Release barred Ericksen from recovering against Rush as an assignee of Dr. Moore's indemnity claim. The court declined to rule or make any findings regarding a potential indemnity claim against Rush, determining that this issue was not properly before the court.

After Ericksen learned of Rush's Trust Fund, ostensibly covering Dr. Moore, she filed supplementary proceedings under section 2—1402 of the Code of Civil Procedure (735 ILCS 5/2—1402 (West 1994)) (section 2—1402) and caused citation notices to issue and be served upon Rush and Continental (citation action) in 84 L 13737. That supplementary proceeding must be revisited here because the circuit court order in the present contract action appeal was based upon its reading of the order in the citation action, in finding that Ericksen was collaterally estopped from proceeding in the contract

action to enforce Dr. Moore's right to indemnity from Rush and satisfy the balance of her judgment against Dr. Moore with the excess insurance. Continental and Rush jointly moved to quash the citation and, in the alternative, moved for summary judgment. Ericksen also moved for summary judgment.

Rush and Continental argued in the supplementary proceedings that they could not be liable to Ericksen for two reasons: first, the E-R Release barred the contract claim; and second, the money in the Trust Fund did not constitute assets that could be reached in a section 2—1402 citation action.

At a hearing to decide these supplementary proceeding motions, the circuit court made separate findings regarding Ericksen's claims against Continental and Rush. First, the court granted Continental's motion, ruling that Continental had no obligation to satisfy the estate's judgment against Dr. Moore, because Ericksen, as Dr. Moore's assignee, had no rights in the Trust Fund greater than Dr. Moore, and Dr. Moore had no individual right in the Trust Fund administered by Continental except as directed by Rush under terms of the trust. Then, the circuit court dismissed the citation action against Rush, holding that it did not have jurisdiction to decide whether Rush was obligated to indemnify Dr. Moore or his assignee. The court explained that Dr. Moore's indemnity claim was unliquidated and not a section 2—1402 asset that could be reached in supplementary proceedings. Because Ericksen, as assignee of Dr. Moore's claim, stood in Dr. Moore's shoes, the court had no jurisdiction over her indemnity action against Rush. The court correctly concluded that Ericksen's claim was "an unliquidated claim based upon [Dr. Moore's] contract rights in [sic] which they may feel free to pursue in any other court at any other time in any other place that has proper jurisdiction but not here."

Having announced its want of jurisdiction, the citation court nevertheless went on to discuss the validity of the E-R Release and found that the release unambiguously referred to all potential claims against Rush, including derivative claims stemming from Dr. Moore's employment with Rush, which the court believed prevented Ericksen from recovering on Dr. Moore's claim against Rush. In a written order, the court restated its findings, concluding that any rights Dr. Moore had against Rush could not be resolved in supplementary proceedings, and further finding that the E-R Release exonerated Rush from any derivative liability to Ericksen.

Ericksen appealed the circuit court's dismissal of her claims against Continental but did not appeal the dismissal of her citation action against Rush. In *Ericksen v. Moore*, 264 Ill. App. 3d 1116 (1994)

(unpublished order under Supreme Court Rule 23), this court affirmed, holding that as the trustee of the Trust Fund, Continental owed no duty to disburse funds to Dr. Moore or Ericksen unless, as provided by the terms of the trust instrument, Rush had issued a disbursement certificate to Continental, which it had not. Our court also briefly discussed the circuit court's findings with regard to Rush; however, after noting that Ericksen did not appeal the dismissal of the citation proceedings against Rush, we chose not to address the correctness of those findings.

Ericksen thereafter filed a new complaint against Rush in 94 L 13645 (contract action), seeking to enforce Dr. Moore's indemnity claim and alleging that the E-R Release did not preclude Rush from being held derivatively liable to her. Rush moved to dismiss the suit pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1994)) (section 2—619), arguing that Ericksen could not again assert the same theory of liability she raised in the previous citation proceedings against Rush. The circuit court in the contract action reviewed the proceedings before the citation court, applied the doctrine of collateral estoppel to Ericksen's claim against Rush, and dismissed the case. Ericksen appeals. For reasons that follow, we reverse and remand for further proceedings.

## I

■ A section 2—619 motion to dismiss admits all well-pleaded facts in the complaint. All documents submitted in support of the motion must be considered in a light most favorable to the nonmoving party, and the motion will be granted if there exist no disputed issues of fact. 735 ILCS 5/2—619 (West 1994); *Jackson v. Moreno*, 278 Ill. App. 3d 503, 505, 663 N.E.2d 27 (1996). A reviewing court exercises *de novo* review of orders granting motions to dismiss. *Lawson v. City of Chicago*, 278 Ill. App. 3d 628, 634, 662 N.E.2d 1377 (1996); *Crespo v. Weber Stephen Products Co.*, 275 Ill. App. 3d 638, 641, 656 N.E.2d 154 (1995).

■ The principal issue in the instant appeal is whether the circuit court in the contract action correctly found that Ericksen is collaterally estopped from bringing a claim against Rush, based upon the citation court's findings pertaining to the E-R Release. The doctrine of collateral estoppel precludes a party from relitigating a factual issue in a subsequent judicial proceeding if three factors are present: (1) the issue decided in the previous action is identical to the issue presented in the current action; (2) there was a final judgment on the merits in the previous action; and (3) the party against whom estoppel is asserted was a party or was in privity with a party to the previ-

ous action. *Illinois State Chamber of Commerce v. Pollution Control Board*, 78 Ill. 2d 1, 7, 398 N.E.2d 9 (1979); *Progressive Land Developers, Inc. v. Exchange National Bank*, 266 Ill. App. 3d 934, 945, 641 N.E.2d 608 (1994). The party against whom estoppel is asserted must have had a full opportunity to litigate the issue in question. *Sampson v. Cape Industries, Ltd.*, 229 Ill. App. 3d 943, 949, 593 N.E.2d 1158 (1992).

The parties before this court dispute both the nature of the findings made by the circuit court in the supplementary proceedings and whether the dismissal of Ericksen's indemnity contract claim in those proceedings constitutes a final judgment on the merits. Ericksen asserts that because the citation court initially found it lacked jurisdiction to decide the merits of her indemnity claim, it could not have decided any substantive issues related to the E-R Release on their merits. Rush insists that the court explicitly decided the validity of that release, pointing out that the court explained at length why the release barred Ericksen's claim, a conclusion that Ericksen chose not to appeal.

A review of the transcript from the supplementary hearing, and the written order dismissing the citations, reveals that the circuit court made two specific findings: first, that it had no jurisdiction over the proceedings because the Trust Fund did not contain any liquidated assets that belonged to Dr. Moore reachable in a citation action, and because the indemnity claim against Rush could not be brought in a supplementary proceeding; and second, that any Rush assets Ericksen could reach in a supplementary proceeding were protected by the E-R Release, which also released Dr. Moore from liability for actions that took place when he worked for Rush.

■ Section 2—1402(a), the statute authorizing the citation action, provides a mechanism by which a judgment creditor may initiate supplementary proceedings to discover the assets of a judgment debtor or third party and apply those assets to satisfy the judgment. 735 ILCS 5/2—1402(a) (West 1992); *Bloink v. Olson*, 265 Ill. App. 3d 711, 714, 638 N.E.2d 406 (1994). These proceedings may be initiated only after the circuit court enters a judgment. *Pyshos v. Heart-Land Development Co.*, 258 Ill. App. 3d 618, 622, 630 N.E.2d 1054 (1994). Before a judgment creditor may proceed against a third party who is not the judgment debtor, the record must contain some evidence that the third party possesses assets of the judgment debtor. Only then does the citation court have the jurisdiction to order that party to produce those assets to satisfy the judgment. *Pyshos*, 258 Ill. App. 3d at 623; *Lange v. Misch*, 232 Ill. App. 3d 1077, 1081, 598 N.E.2d 412 (1992), *appeal denied*, 147 Ill. 2d 628, 606 N.E.2d 1227 (1992). If the

third party possesses no assets of the judgment debtor, then the court has no authority to enter any judgment against the third party in a supplementary proceeding. *Pyshos*, 258 Ill. App. 3d at 624; *Lange*, 232 Ill. App. 3d at 1080-81; *Stevenson v. Samkow*, 142 Ill. App. 3d 293, 297, 491 N.E.2d 1318 (1986); *Strojny v. Egeland*, 132 Ill. App. 2d 779, 781, 270 N.E.2d 231 (1971).

■ In the present case, the circuit court in the supplementary proceedings correctly concluded that Rush currently did not possess any assets of Dr. Moore; his indemnity claim against Rush, which he assigned to Ericksen, was an unliquidated claim that did not qualify as an asset under section 2—1402; and, as a result, the court lacked any authority to enter a judgment against Rush, or to decide Ericksen's indemnity claim, and could not consider any arguments relating to the merits of the indemnity claim. The court, being without authority to consider Ericksen's indemnity claim, also lacked the power to decide the merits of Rush's affirmative defense to that claim, the E-R Release. See *In re M.M.*, 156 Ill. 2d 53, 64, 69, 619 N.E.2d 722 (1993); *In re Marriage of Campbell*, 261 Ill. App. 3d 483, 491, 633 N.E.2d 797 (1993); *Evans v. Department of Transportation*, 251 Ill. App. 3d 440, 446, 622 N.E.2d 444 (1993).

■ After the circuit court correctly concluded that it lacked authority to decide the merits of Ericksen's indemnity claim, the court's subsequent findings regarding the E-R Release were surplusage. The doctrine of collateral estoppel may not be applied to issues that were incidentally decided but were not essential to support the judgment in the previous action. *Firstmark Standard Life Insurance Co. v. Superior Bank FSB*, 271 Ill. App. 3d 435, 438, 649 N.E.2d 465 (1995). The judgment in the first suit bars only the litigation in a subsequent suit of issues that were properly litigated and determined and not other matters that could have been litigated and determined. *Telegraph Savings & Loan Ass'n v. Schilling*, 105 Ill. 2d 166, 178, 473 N.E.2d 921 (1984). The circuit court's findings as to the E-R Release, then, after it dismissed the citation as to Rush for lack of debtor property, may not serve to collaterally estop Ericksen's potential indemnity contract claim. *Lehman v. Continental Health Care, Ltd.*, 240 Ill. App. 3d 795, 802, 608 N.E.2d 303 (1992); *Bunker Ramo Corp. v. United Business Forms, Inc.*, 713 F.2d 1272, 1279 (7th Cir. 1983); *Arrowsmith v. United Press International*, 320 F.2d 219, 221 (2d Cir. 1963); *Muscardin v. Brownnell*, 227 F.2d 31, 32 (D.C. Cir. 1955).

Rush urges that the circuit court did have the power to consider affirmative defenses in the supplementary proceeding, and therefore could consider its argument relating to the E-R Release, relying upon *Sampson v. Cape Industries, Ltd.*, 229 Ill. App. 3d 943, 593 N.E.2d

1158 (1992). In *Sampson*, the court affirmed an order in a garnishment proceeding granting summary judgment in favor of defendant, who invoked the doctrine of collateral estoppel as an affirmative defense. The court reasoned that the issue of defendant's liability had been fully litigated in a previous case in which both plaintiff and defendant were parties. 229 Ill. App. 3d at 950-51. The court in *Sampson* was not faced with any subject matter jurisdictional issues, as here, and its decision concentrated on whether a previous decision addressed the same issue that plaintiff was raising in the subsequent lawsuit.

Rush contends that because Ericksen requested the court to construe the release in the citation proceedings, presumably in her motion for summary judgment, she cannot now argue that the court lacked jurisdiction to make findings on that issue. Generally, a party may not claim the circuit court committed reversible error when at trial the same party acquiesced in the circuit court's actions. *Saxton v. Toole*, 240 Ill. App. 3d 204, 212, 608 N.E.2d 233 (1992); *Thomas v. First National Bank*, 134 Ill. App. 3d 192, 212, 479 N.E.2d 1014 (1985). Although Ericksen did not raise the jurisdictional issue before the circuit court in the citation action, once the court ruled that it lacked the authority to adjudicate her indemnity claim, she was entitled to accept that ruling as the law of the case without waiving her right to have the release construed before a court that did have authority to consider her claims and any defenses thereto, including the release. A circuit court's order that is final and appealable, and which has been left undisturbed by the appellate court, becomes the law of the case (*Heller Financial, Inc. v. Johns-Byrne Co.*, 264 Ill. App. 3d 681, 694, 637 N.E.2d 1085 (1994)), which binds a court to particular views of law announced in the prior order "unless the facts require a different interpretation." *Heller*, 264 Ill. App. 3d at 694. Here, the citation court's holding that it lacked jurisdiction to consider Ericksen's indemnity claim was never appealed and became the law of the case. Because that court could not decide the claim, Ericksen may bring a new claim addressing that issue in a court of competent jurisdiction.

Rush points out that the parties fully litigated the issue of the E-R Release during the supplementary proceedings in the prior decision. Rush contends that because Ericksen had a full and fair opportunity to litigate the issue, she should not be allowed to relitigate that issue in the present case. We disagree both from the standpoint of jurisdiction and the fullness of the hearing afforded her. The latter issue will be considered in Point II of this opinion.

Whether a party fully litigated the issue in a previous case is a relevant factor to consider, in order to apply the collateral estoppel

doctrine. There also must have been a final judgment on the merits in the previous case. In the case at bar, that requirement was not met. When Ericksen's indemnity claim was dismissed for lack of jurisdiction, the dismissal did not constitute a final decision on the merits, and she is not collaterally estopped from relitigating that claim. *Weiland Tool & Manufacturing Co. v. Whitney*, 44 Ill. 2d 105, 113, 251 N.E.2d 242 (1969); *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137, 152, 636 N.E.2d 503 (1994).

The case cited by Rush relating to this issue, *Fried v. Rosario*, 171 Ill. App. 3d 156, 160, 524 N.E.2d 1144 (1988), is distinguishable. There, the court held that a litigant must directly appeal an adverse judgment and may not take "a second shot at the same issue before a new judge of equal jurisdiction." 171 Ill. App. 3d at 160. In this case, however, the supplementary proceeding court held that it lacked jurisdiction. Rather than attempting to take "a second shot" before a different judge, Ericksen properly filed suit before a court that would have jurisdiction over her indemnity claim and any affirmative defenses Rush might have to that claim.

## II

■ Ericksen has asked this court to decide the release issue. No answer to Ericksen's present complaint has been filed, as yet, by Rush. Rush has not raised the issue of the release as an affirmative defense, and Rush did not argue the issue in its brief, basing its motion and its arguments on the collateral estoppel issue.

Ericksen's motion for summary judgment before the citation court in supplementary proceedings was premised upon the supposition that the court had subject matter jurisdiction, which the citation court found that it did not. That motion asserted that Dr. Moore was charged with malpractice for the period from 1980 to January 7, 1984; Dr. Moore was employed by Rush only until June 30, 1981; Dr. Moore treated the decedent as his private patient from and after July 31, 1981; Dr. Moore was not a Rush employee on January 5, 1984, and was not in the Rush emergency room on January 5, 1984, the date of Rush's alleged malpractice; and the E-R Release referred only to January 5, 1984. Rush's answers to Ericksen's interrogatories on May 6, 1985, almost five years before the release date, stated that Dr. Moore was not a Rush employee on January 5, 1984. A loss report compiled by Rush acknowledged that the cause of action against Rush arose on January 5, 1984, the date on which Rush denoted that Dr. Moore was an "independent." Although Dr. Moore was a named principal defendant, the release nowhere identifies Dr. Moore by

name, and he never sought to dismiss Ericksen's claims before or during the trial. Notwithstanding the foregoing, Rush claims that the release covered Dr. Moore as its employee on January 5, 1984.

Nothing in the transcript of the citation proceedings reveals that the circuit court there ever received evidence as to the intent of the parties or scope of the release under the foregoing assertions, or ever heard arguments on the merits relating to the intended scope of the release in light of the factors mentioned in the preceding paragraph.

Further, Ericksen alleges that Rush failed to disclose the existence of the indemnity agreement or Trust Fund, and that Rush remained in continuous contact with Dr. Moore's attorneys even after it settled the claim. These allegations, she suggests, raise a further issue as to her knowledge and belief at the time she entered into the release agreement with Rush, being unaware of potential claims against Rush, about which Rush did not inform her before signing the release, which could affect the validity of the agreement, citing *Simmons v. Blauw*, 263 Ill. App. 3d 829, 832, 635 N.E.2d 601 (1994); *International Insurance Co. v. Sargent & Lundy*, 242 Ill. App. 3d 614, 626, 609 N.E.2d 842 (1993). Because Rush has not yet filed an answer, Rush has not responded to these allegations. It is unclear at this point whether Ericksen has raised material questions of fact as to this issue that would have to be resolved by the circuit court.

The citation court did not determine whether Ericksen presented a genuine issue of material fact regarding the intended scope of the E-R Release or any issue as to withheld material information. Summary judgment was inappropriate in such circumstances (*Diamond Headache Clinic, Ltd. v. Loeber Motors, Inc.*, 172 Ill. App. 3d 364, 368, 556 N.E.2d 599 (1988)) for these reasons as well.

This case presents questions of material fact; this court is precluded from resolving them without first remanding the case to the circuit court to make fact findings.

Reliance by the circuit court in 94 L 13645, the contract action, upon the ruling of the citation court as to the effect to be given the E-R Release was misplaced. Accordingly, the order of the circuit court dismissing Ericksen's complaint is reversed, and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded, with directions.

HOFFMAN and HOURIHANE, JJ., concur.