1-95-3490

DANUTA ERICKSEN, Administratrix of the ) Appeal from the
Estate of BOZENA BAJAJ, both in that ) Circuit Court of
capacity and as the assignee of ) Cook County.
certain rights of KENNETH MOORE, M.D., )
 )
 Plaintiff-Appellant, )
 )
 v. ) 
 ) 
RUSH PRESBYTERIAN ST. LUKE'S MEDICAL ) 
CENTER, ) Honorable
 ) Ian H. Levin,
 Defendant-Appellee. ) Judge Presiding.


 PRESIDING JUSTICE HARTMAN delivered the opinion of the court:
 This appeal involves one of three successive and distinct Cook
County Circuit Court actions. The initiating litigation by
plaintiff was for medical malpractice, followed by supplementary
proceedings in which she sought assets of the judgment debtor, and
the last being a contract action by plaintiff as an assignee of the
judgment debtor. Although only the contract action is presently
being appealed, each will be explained briefly for purposes of
understanding the nature of the present controversy. 
 Plaintiff, Danuta Ericksen, as administratrix of the estate of
Bozena Bajaj (Ericksen), appeals the circuit court order in 94 L
13645, the contract action (contract action), in which her claim as
assignee of her judgment debtor's, Dr. Kenneth L. Moore's (Dr.
Moore) employment contract rights for indemnity against his former
employer, Rush Presbyterian St. Luke's Medical Center (Rush), was
dismissed. 
 The circuit court's basis for dismissing Ericksen's contract
action was that a preceding court order in the supplementary
proceedings (84 L 13737) (citation action) had ruled that a release
signed by Ericksen and Rush barred Ericksen from proceeding any
further in her pursuit of Dr. Moore's indemnity claim against Rush.
 Ericksen sued Dr. Moore, her decedent's treating physician,
and Rush, in 84 L 13737, a medical malpractice action (malpractice
action), after her decedent died on January 7, 1984 in Rush's
emergency room. Decedent first saw Dr. Moore in 1980, complaining
of severe headaches, which Dr. Moore diagnosed as migraines. He
treated decedent for her headaches during the time he worked as a
resident physician for Rush, a period which extended from November
5, 1980, to June 30, 1981. Dr. Moore continued treating her
thereafter as his private patient until January 5, 1984, when she
was taken to Rush's emergency room. An autopsy revealed that she
had suffered from hydrocephalus, a treatable brain condition. 
 The record reveals that when he began working for Rush, Dr.
Moore entered into an understanding with Rush under a "House Staff
Officer's Agreement," in which Rush promised to pay for legal
obligations incurred by the doctor during the course of his Rush 
employment. The House Staff Officer's Agreement provided Dr. Moore
with potential coverage under another document entitled, "Amended
and Restated General/Professional Liability Loss Fund Trust
Agreement" (Trust Fund). These documents evidenced up to $2
million in indemnification coverage per occurrence, and excess
insurance of $5 million, or more, for liability resulting from
malpractice claims. The Trust Fund was a private resource fund
Rush established to insure itself and its employees against
malpractice liability claims. Continental Illinois National Bank
and Trust Company of Chicago (Continental) served as its fund
trustee. 
 Ericksen was not apprised of the Trust Fund's existence or its
potential benefit to Dr. Moore at the time of her settlement with
Rush in the malpractice action in 1989, nor until after the jury's
verdict against Dr. Moore and judgment on that verdict had been
entered on June 12, 1991, although Ericksen previously had made
inquiry of Rush as to potential malpractice coverage for Dr. Moore. 
Ericksen was not advised of the existence of the House Staff
Officer's Agreement until Rush attached a copy of it to Rush's
motion to dismiss the present contract action.
 Ericksen's malpractice action against Dr. Moore was tried to
a jury in 1991. At trial, Dr. Moore was represented by attorneys
employed through his private malpractice insurance carrier, Medical
Protective Company of Fort Wayne, Indiana (Medical Protective). 
Expert witnesses testified that Dr. Moore deviated from the
standard of care during the entire time he treated decedent between
1980 and 1984, asserting that Dr. Moore could have diagnosed the
cause of decedent's headaches correctly as early as November 1980
by running a CT scan, and could have treated her condition, which
might have prevented her death. A jury returned a verdict against
Dr. Moore, awarding Ericksen more than $5 million in damages.
 Meanwhile, Rush had retained its own attorneys after the
initial lawsuit was filed. Although Rush did not participate in
Dr. Moore's malpractice trial, counsel for Dr. Moore kept Rush's
attorney informed of the status of the case, without telling
Ericksen's attorney about these discussions. Rush's legal
department also sent written confirmation of Dr. Moore's indemnitee
status to Medical Protective, acknowledging Dr. Moore's coverage by
Rush for any suits arising from the time he worked at Rush. 
 As previously noted, in July 1989, two years before trial,
Ericksen and Rush entered into a release agreement. In return for
a cash settlement, Ericksen agreed to release Rush in the
malpractice action, "its agents, servants, employees, officers,
insurers, successors and assigns, *** from all claims and demands
*** arising or growing out of an accident, casualty or event which
occurred on or about the 5th day of January, 1984 ***." (Emphasis
added) (E-R Release). The circuit court approved the settlement,
in which Rush would pay Ericksen $36,123 and her attorney $12,000,
and dismissed her claim against Rush. 
 In a post-trial motion before the trial judge, Dr. Moore
argued for the first time that the E-R Release also released him
from liability as a former Rush employee, and was given leave to
file an affirmative defense based upon that release. In September
1991, the circuit court denied Dr. Moore's motion, holding among
other things that Ericksen's settlement agreement with Rush did not
release Dr. Moore from liability to Ericksen and the Estate. The
court made this order final and appealable. 
 Ericksen and Dr. Moore subsequently entered into a Covenant
Not to Execute Against Certain Assets (Covenant). Dr. Moore
authorized payment by Medical Protective to the Estate of
$1,030,000, the maximum amount of coverage provided. At the same
time, Dr. Moore assigned his indemnity claim against Rush to
Ericksen as partial satisfaction of the remainder of the $5 million
judgment, in exchange for her promise not to pursue Dr. Moore's
personal assets. 
 When Rush learned of the Covenant, it moved to intervene in 84
L 13737, the initial litigation. The circuit court then attempted
to clarify its previous order, denying the post-trial motion, but
explaining that it "did not determine and was not intended to
determine" whether the E-R Release barred Ericksen from recovering
against Rush as an assignee of Dr. Moore's indemnity claim. The
court declined to rule or make any findings regarding a potential
indemnity claim against Rush, determining that this issue was not
properly before the court. 
 After Ericksen learned of Rush's Trust Fund, ostensibly
covering Dr. Moore, she filed supplementary proceedings under
section 2-1402 of the Code of Civil Procedure (735 ILCS 5/2-1402
(West 1994)) (section 2-1402) and caused citation notices to issue
and be served upon Rush and Continental (citation action) in 84 L
13737. That supplementary proceeding must be revisited here
because the circuit court order in the present contract action
appeal was based upon its reading of the order in the citation
action, in finding that Ericksen was collaterally estopped from
proceeding in the contract action to enforce Dr. Moore's right to
indemnity from Rush and satisfy the balance of her judgment against
Dr. Moore with the excess insurance. Continental and Rush jointly
moved to quash the citation and, in the alternative, moved for
summary judgment. Ericksen also moved for summary judgment. 
 Rush and Continental argued in the supplementary proceedings
that they could not be liable to Ericksen for two reasons: first,
the E-R Release barred the contract claim; and second, the money in
the Trust Fund did not constitute assets that could be reached in
a section 2-1402 citation action. 
 At a hearing to decide these supplementary proceeding motions,
the circuit court made separate findings regarding Ericksen's
claims against Continental and Rush. First, the court granted
Continental's motion, ruling that Continental had no obligation to
satisfy the Estate's judgment against Dr. Moore, because Ericksen,
as Dr. Moore's assignee, had no rights in the Trust Fund greater
than Dr. Moore, and Dr. Moore had no individual right in the Trust
Fund administered by Continental except as directed by Rush under
terms of the trust. Then, the circuit court dismissed the citation
action against Rush, holding that it did not have jurisdiction to
decide whether Rush was obligated to indemnify Dr. Moore or his
assignee. The court explained that Dr. Moore's indemnity claim was
unliquidated and not a section 2-1402 asset that could be reached
in supplementary proceedings. Because Ericksen, as assignee of Dr.
Moore's claim, stood in Dr. Moore's shoes, the court had no
jurisdiction over her indemnity action against Rush. The court
correctly concluded that Ericksen's claim was "an unliquidated
claim based upon [Dr. Moore's] contract rights in [sic] which they
may feel free to pursue in any other court at any other time in any
other place that has proper jurisdiction but not here." 
 Having announced its want of jurisdiction, the citation court
nevertheless went on to discuss the validity of the E-R Release,
and found that the release unambiguously referred to all potential
claims against Rush, including derivative claims stemming from Dr.
Moore's employment with Rush, which the court believed prevented
Ericksen from recovering on Dr. Moore's claim against Rush. In a
written order, the court restated its findings, concluding that any
rights Dr. Moore had against Rush could not be resolved in
supplementary proceedings, and further finding that the E-R Release
exonerated Rush from any derivative liability to Ericksen. 
 Ericksen appealed the circuit court's dismissal of her claims
against Continental, but did not appeal the dismissal of her
citation action against Rush. In Ericksen v. Moore, No. 1-92-3404
(unpublished order under Supreme Court Rule 23), this court
affirmed, holding that as the trustee of the Trust Fund,
Continental owed no duty to disburse funds to Dr. Moore or Ericksen
unless, as provided by the terms of the trust instrument, Rush had
issued a disbursement certificate to Continental, which it had not. 
Our court also briefly discussed the circuit court's findings with
regard to Rush; however, after noting that Ericksen did not appeal
the dismissal of the citation proceedings against Rush, we chose
not to address the correctness of those findings. 
 Ericksen thereafter filed a new complaint against Rush in 94
L 13645 (contract action), seeking to enforce Dr. Moore's indemnity
claim and alleging that the E-R Release did not preclude Rush from
being held derivatively liable to her. Rush moved to dismiss the
suit pursuant to section 2-619 of the Code of Civil Procedure (735
ILCS 5/2-619 (West 1994)) (section 2-619), arguing that Ericksen
could not again assert the same theory of liability she raised in
the previous citation proceedings against Rush. The circuit court
in the contract action reviewed the proceedings before the citation
court, applied the doctrine of collateral estoppel to Ericksen's
claim against Rush, and dismissed the case. Ericksen appeals. For
reasons which follow, we reverse and remand for further
proceedings.
 I
 A section 2-619 motion to dismiss admits all well-pleaded
facts in the complaint. All documents submitted in support of the
motion must be considered in a light most favorable to the
nonmoving party, and the motion will be granted if there exist no
disputed issues of fact. 735 ILCS 5/2-619 (West 1994); Jackson v.
Moreno, 278 Ill. App. 3d 503, 505, 663 N.E.2d 27 (1996). A
reviewing court exercises de novo review of orders granting motions
to dismiss. Lawson v. City of Chicago, 278 Ill. App. 3d 628, 634,
662 N.E.2d 1377 (1996); Crespo v. Weber Stephen Products Co., 275
Ill. App. 3d 638, 641, 656 N.E.2d 154 (1995). 
 The principal issue in the instant appeal is whether the
circuit court in the contract action correctly found that Ericksen
is collaterally estopped from bringing a claim against Rush, based
upon the citation court's findings pertaining to the E-R Release.
The doctrine of collateral estoppel precludes a party from
relitigating a factual issue in a subsequent judicial proceeding if
three factors are present: (1) the issue decided in the previous
action is identical to the issue presented in the current action;
(2) there was a final judgment on the merits in the previous
action; and (3) the party against whom estoppel is asserted was a
party or was in privity with a party to the previous action. 
Illinois State Chamber of Commerce v. Pollution Control Board, 78
Ill. 2d 1, 7, 398 N.E.2d 9 (1979); Progressive Land Developers,
Inc. v. Exchange National Bank of Chicago, 266 Ill. App. 3d 934,
945, 641 N.E.2d 608 (1994). The party against whom estoppel is
asserted must have had a full opportunity to litigate the issue in
question. Sampson v. Cape Industries Ltd., 229 Ill. App. 3d 943,
949, 593 N.E.2d 1158 (1992).
 The parties before this court dispute both the nature of the
findings made by the circuit court in the supplementary
proceedings, and whether the dismissal of Ericksen's indemnity
contract claim in those proceedings constitutes a final judgment on
the merits. Ericksen asserts that because the citation court
initially found it lacked jurisdiction to decide the merits of her
indemnity claim, it could not have decided any substantive issues
related to the E-R Release on their merits. Rush insists that the
court explicitly decided the validity of that release, pointing out
that the court explained at length why the release barred
Ericksen's claim, a conclusion which Ericksen chose not to appeal.
 A review of the transcript from the supplementary hearing, and
the written order dismissing the citations, reveals that the
circuit court made two specific findings: first, that it had no
jurisdiction over the proceedings because the Trust Fund did not
contain any liquidated assets that belonged to Dr. Moore reachable
in a citation action, and because the indemnity claim against Rush
could not be brought in a supplementary proceeding; and second,
that any Rush assets Ericksen could reach in a supplementary
proceeding were protected by the E-R Release, which also released
Dr. Moore from liability for actions that took place when he worked
for Rush.
 Section 2-1402(a), the statute authorizing the citation
action, provides a mechanism by which a judgment creditor may
initiate supplementary proceedings to discover the assets of a
judgment debtor or third party, and apply those assets to satisfy
the judgment. 735 ILCS 5/2-1402(a) (West 1992); Bloink v. Olson,
265 Ill. App. 3d 711, 714, 638 N.E.2d 406 (1994). These
proceedings may be initiated only after the circuit court enters a
judgment. Pyshos v. Heart-Land Development Co., 258 Ill. App. 3d
618, 622, 630 N.E.2d 1054 (1994). Before a judgment creditor may
proceed against a third party who is not the judgment debtor, the
record must contain some evidence that the third party possesses
assets of the judgment debtor. Only then does the citation court
have the jurisdiction to order that party to produce those assets
to satisfy the judgment. Pyshos, 258 Ill. App. 3d at 623; Lange v.
Misch, 232 Ill. App. 3d 1077, 1081, 598 N.E.2d 412, appeal denied,
147 Ill. 2d 628, 606 N.E.2d 1227 (1992). If the third party
possesses no assets of the judgment debtor, then the court has no
authority to enter any judgment against the third party in a
supplementary proceeding. Pyshos, 258 Ill. App. 3d at 624; Lange,
232 Ill. App. 3d at 1080-81; Stevenson v. Samkow, 142 Ill. App. 3d
293, 297, 491 N.E.2d 1318 (1986); Strojny v. Egeland, 132 Ill. App.
2d 779, 781, 270 N.E.2d 231 (1971).
 In the present case, the circuit court in the supplementary
proceedings correctly concluded that Rush currently did not possess
any assets of Dr. Moore; his indemnity claim against Rush, which
he assigned to Ericksen, was an unliquidated claim that did not
qualify as an asset under section 2-1402; and, as a result, the
court lacked any authority to enter a judgment against Rush, or to
decide Ericksen's indemnity claim, and could not consider any
arguments relating to the merits of the indemnity claim. The
court, being without authority to consider Ericksen's indemnity
claim, also lacked the power to decide the merits of Rush's
affirmative defense to that claim, the E-R Release. See In re
M.M., 156 Ill. 2d 53, 64, 69, 619 N.E.2d 722 (1993); In re Marriage
of Campbell, 261 Ill. App. 3d 483, 491, 633 N.E.2d 797 (1993);
Evans v. Department of Transportation, 251 Ill. App. 3d 440, 446,
622 N.E.2d 444 (1993). 
 After the circuit court correctly concluded that it lacked
authority to decide the merits of Ericksen's indemnity claim, the
court's subsequent findings regarding the E-R Release were
surplusage. The doctrine of collateral estoppel may not be applied
to issues that were incidentally decided but were not essential to
support the judgment in the previous action. Firstmark Standard
Life Insurance Co. v. Superior Bank FSB, 271 Ill. App. 3d 435, 438,
649 N.E.2d 465 (1995). The judgment in the first suit bars only
the litigation in a subsequent suit of issues that were properly
litigated and determined, and not other matters that could have
been litigated and determined. Telegraph Savings and Loan
Association of Chicago v. Schilling, 105 Ill. 2d 166, 178, 473
N.E.2d 921 (1984). The circuit court's findings as to the E-R
Release, then, after it dismissed the citation as to Rush for lack
of debtor property, may not serve to collaterally estop Ericksen's
potential indemnity contract claim. Lehman v. Continental Health
Care, Ltd., 240 Ill. App. 3d 795, 802, 608 N.E.2d 303 (1992);
Bunker Ramo Corp. v. United Business Forms, Inc., 713 F.2d 1272,
1279 (7th Cir. 1983); Arrowsmith v. United Press International, 320
F.2d 219, 221 (2nd Cir. 1963); Muscardin v. Brownnell, 227 F.2d 
31, 32 (D.C. Cir. 1955).
 Rush urges that the circuit court did have the power to
consider affirmative defenses in the supplementary proceeding, and
therefore could consider its argument relating to the E-R Release,
relying upon Sampson v. Cape Industries Ltd., 229 Ill. App. 3d 943,
593 N.E.2d 1158 (1992). In Sampson, the court affirmed an order
in a garnishment proceeding granting summary judgment in favor of
defendant, who invoked the doctrine of collateral estoppel as an
affirmative defense. The court reasoned that the issue of
defendant's liability had been fully litigated in a previous case
in which both plaintiff and defendant were parties. 229 Ill. App.
3d at 950-51. The court in Sampson was not faced with any subject
matter jurisdictional issues, as here, and its decision
concentrated on whether a previous decision addressed the same
issue that plaintiff was raising in the subsequent lawsuit.
 Rush contends that because Ericksen requested the court to
construe the release in the citation proceedings, presumably in her
motion for summary judgment, she cannot now argue that the court
lacked jurisdiction to make findings on that issue. Generally, a
party may not claim the circuit court committed reversible error
when at trial the same party acquiesced in the circuit court's
actions. Saxton v. Toole, 240 Ill. App. 3d 204, 212, 608 N.E.2d
233 (1992); Thomas v. First National Bank of Chicago, 134 Ill. App.
3d 192, 212, 479 N.E.2d 1014 (1985). Although Ericksen did not
raise the jurisdictional issue before the circuit court in the
citation action, once the court ruled that it lacked the authority
to adjudicate her indemnity claim, she was entitled to accept that
ruling as the law of the case without waiving her right to have the
release construed before a court that did have authority to
consider her claims and any defenses thereto, including the
release. A circuit court's order that is final and appealable, and
which has been left undisturbed by the appellate court, becomes the
law of the case (Heller Financial, Inc. v. Johns-Byrne Co., 264
Ill. App. 3d 681, 694, 637 N.E.2d 1085 (1994)), which binds a court
to particular views of law announced in the prior order "unless the
facts require a different interpretation." Heller, 264 Ill. App.
3d at 694. Here, the citation court's holding that it lacked
jurisdiction to consider Ericksen's indemnity claim was never
appealed and became the law of the case. Because that court could
not decide the claim, Ericksen may bring a new claim addressing
that issue in a court of competent jurisdiction. 
 Rush points out that the parties fully litigated the issue of
the E-R Release during the supplementary proceedings in the prior
decision. Rush contends that because Ericksen had a full and fair
opportunity to litigate the issue, she should not be allowed to
relitigate that issue in the present case. We disagree both from
the standpoint of jurisdiction and the fullness of the hearing
afforded her. The latter issue will be considered in Point II of
this opinion.
 Whether a party fully litigated the issue in a previous case
is a relevant factor to consider, in order to apply the collateral
estoppel doctrine. There also must have been a final judgment on
the merits in the previous case. In the case at bar, that
requirement was not met. When Ericksen's indemnity claim was
dismissed for lack of jurisdiction, the dismissal did not
constitute a final decision on the merits, and she is not
collaterally estopped from relitigating that claim. Weiland Tool
& Manufacturing Co. v. Whitney, 44 Ill. 2d 105, 113, 251 N.E.2d 242
(1969); Congregation of the Passion, Holy Cross Province v. Touche
Ross & Co., 159 Ill. 2d 137, 152, 636 N.E.2d 503 (1994). 
 The case cited by Rush relating to this issue, Fried v.
Rosario, 171 Ill. App. 3d 156, 160, 524 N.E.2d 1144 (1988), is
distinguishable. There, the court held that a litigant must
directly appeal an adverse judgment, and may not take "a second
shot at the same issue before a new judge of equal jurisdiction." 
In this case, however, the supplementary proceeding court held that
it lacked jurisdiction. Rather than attempting to take "a second
shot" before a different judge, Ericksen properly filed suit before
a court that would have jurisdiction over her indemnity claim and
any affirmative defenses Rush might have to that claim. 
 II
 Ericksen has asked this court to decide the release issue. No
answer to Ericksen's present complaint has been filed, as yet, by
Rush. Rush has not raised the issue of the release as an
affirmative defense, and Rush did not argue the issue in its brief,
basing its motion and its arguments on the collateral estoppel
issue. 
 Ericksen's motion for summary judgment before the citation
court in supplementary proceedings was premised upon the
supposition that the court had subject matter jurisdiction, which
the citation court found that it did not. That motion asserted
that Dr. Moore was charged with malpractice for the period from
1980 to January 7, 1984; Dr. Moore was employed by Rush only until
June 30, 1981; Dr. Moore treated the decedent as his private
patient from and after July 31, 1981; Dr. Moore was not a Rush
employee on January 5, 1984 and was not in the Rush emergency room
on January 5, 1984, the date of Rush's alleged malpractice; and the
E-R Release referred only to January 5, 1984. Rush's answers to
Ericksen's interrogatories on May 6, 1985, almost five years before
the release date, stated that Dr. Moore was not a Rush employee on
January 5, 1984. A Loss Report compiled by Rush acknowledged that
the cause of action against Rush arose on January 5, 1984, the date
on which Rush denoted that Dr. Moore was an "independent." 
Although Dr. Moore was a named principal defendant, the release
nowhere identifies Dr. Moore by name, and he never sought to
dismiss Ericksen's claims before or during the trial. 
Notwithstanding the foregoing, Rush claims that the release covered
Dr. Moore as its employee on January 5, 1984. 
 Nothing in the transcript of the citation proceedings reveal
that the circuit court there ever received evidence as to the
intent of the parties or scope of the release under the foregoing
assertions, or ever heard arguments on the merits relating to the
intended scope of the release in light of the factors mentioned in
the preceding paragraph. 
 Further, Ericksen alleges that Rush failed to disclose the
existence of the indemnity agreement or Trust Fund, and that Rush
remained in continuous contact with Dr. Moore's attorneys even
after it settled the claim. These allegations, she suggests, raise
a further issue as to her knowledge and belief at the time she
entered into the release agreement with Rush, being unaware of
potential claims against Rush, about which Rush did not inform her
before signing the release, which could affect the validity of the
agreement, citing Simmons v. Blauw, 263 Ill. App. 3d 829, 832, 635
N.E.2d 601 (1994); International Insurance Co. v. Sargent & Lundy,
242 Ill. App. 3d 614, 626, 609 N.E.2d 842 (1993). Because Rush has
not yet filed an answer, Rush has not responded to these
allegations. It is unclear at this point whether Ericksen has
raised material questions of fact as to this issue that would have
to be resolved by the circuit court.
 The citation court did not determine whether Ericksen
presented a genuine issue of material fact regarding the intended
scope of the E-R Release or any issue as to withheld material
information. Summary judgment was inappropriate in such
circumstances, Diamond Headache Clinic Ltd. v. Loeber Motors, Inc.,
172 Ill. App. 3d 364, 368, 556 N.E.2d 599 (1988), for these reasons
as well. 
 This case presents questions of material fact; this court is
precluded from resolving them without first remanding the case to
the circuit court to make fact findings. 
 Reliance by the circuit court in 94 L 13645, the contract
action, upon the ruling of the citation court as to the effect to
be given the E-R Release, was misplaced. Accordingly, the order of
the circuit court dismissing Ericksen's complaint is reversed, and
the case is remanded for further proceedings consistent with this
opinion.
 Reversed and remanded, with directions.
 HOFFMAN and HOURIHANE, JJ., concur.